UNITED STATES ex rel. Frank C. SMITH, Petitioner-Appellant,

v.

Frederick G. REINCKE, Warden, Respondent-Appellee.

No. 83, Docket 29783.

United States Court of Appeals Second Circuit.

Argued Oct. 7, 1965.

Decided Dec. 16, 1965.

Paul W. Orth, Hartford, Conn., for petitioner-appellant.

John F. McGowan, Asst. State's Atty., Otto J. Saur, State's Atty., Joseph T. Gormley, Jr., Asst. State's Atty., Donald

A. Browne, Sp. Asst. State's Atty., for respondent-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Petitioner-appellant, Frank C. Smith, by petition for a writ of habeas corpus filed in the United States District Court for the District of Connecticut, attacks his 1950 Connecticut State conviction for murder in the first degree.[1] The petition contains some 221 allegations that Connecticut obtained this conviction in violation of petitioner's constitutional rights to due process and to equal protection of law. State remedies having been exhausted, Judge Zampano held a hearing and on March 22, 1965 in an exhaustive opinion, United States ex rel. Smith v. Reincke, 239 F.Supp. 887 (D.Conn.1965) denied the petition. Petitioner then applied to this court for a certificate of probable cause and for leave to proceed upon appeal *in forma pauperis*, the application was granted on March 29, 1965 and this appeal was then taken.

The only impressive constitutional claim raised by petitioner concerns the State's examination of its witness George Lowden at petitioner's trial. Prior to petitioner's trial Lowden had pled guilty to a second degree murder charge arising out of the same homicide,[2] and at the time of petitioner's trial he was serving a life term. As part of its case-in-chief the State produced Lowden as a State's witness, but after he was sworn Lowden told the court he did not wish to be a witness for either side. The court informed Lowden he had a right to remain silent if to answer would tend to incriminate him, and he was also given the opportunity to consult with counsel. The prosecution then resumed its questioning. Although Lowden readily answered many of the State's questions, and in doing so established, for example, that he had been one of petitioner's friends, he steadfastly refused to answer questions relating to the crime with which petitioner was charged, refusing on the ground that to answer might be incriminating. When asked by the prosecution how this testimony would incriminate him, he observed:

> Well, if it is not incriminating myself, it might be used to condemn Frank Smith. I have no intention to do that * * *. We will put it that it might incriminate Frank Smith and then I refuse to do so.

At this juncture the prosecutor sought the trial court's permission to impeach Lowden's credibility on the ground that the State was surprised by his failure to testify in accordance with previous assurances that he would do so. Permission was granted and the prosecution produced a "confession" allegedly signed by Lowden and drew the jury's attention to statements contained in this "confession" that were inconsistent with Lowden's testimony on the stand. As Lowden had given some substantive testimony—for example, he denied at Smith's trial that he had received a pistol from Smith, but in the "confession" we assume he had stated the opposite—it was proper to impeach Lowden by showing that this trial testimony was inconsistent with his out-of-court statements prior to the trial.[3] However, the prosecution did not confine its use of the "confession" to contradicting statements Lowden had made while testifying, but quizzed Lowden about statements in this "confession" that were unrelated to his trial testimony. This questioning

---

1. On June 7, 1954 the Connecticut Board of Pardons commuted the sentence to life imprisonment, with the recommendation that petitioner never receive the benefit of pardon or parole.

2. The crime was the murder of a watchman at the Indian Harbor Yacht Club in Greenwich, Connecticut, on July 26, 1949.

3. The Connecticut Supreme Court of Errors ruled that under Connecticut law it was well within the discretion of the trial court to allow cross-examination in such circumstances. State v. Smith, 138 Conn. 196, 82 A.2d 816 (1951).

strongly suggested that Lowden previously had stated he and petitioner committed the crime that petitioner was charged with having committed. For example, the prosecutor at one point referred to the "confession" and said to Lowden: "Didn't you tell me this morning the part in there which said you and Smith went to the Indian Harbor Yacht Club was true?" And in concluding the interrogation of Lowden the prosecutor asked: "Do you recall, Lowden, in my office this morning you said to me in the presence of these prison officials that both you and Smith had guns that night?" An objection to this question was sustained. The prosecutor then asked: "Didn't you tell me in chambers this morning that there was a burst of fire from Smith's gun?" An objection to this second question was also sustained. It must be remembered that prior to this line of inquiry Lowden, the State's witness, had refused to answer direct questions relating to the crime for which petitioner was standing trial on the ground that to answer might be incriminating. Furthermore, Lowden maintained that much of his "confession" was the product of police coercion and was untrue.

Petitioner claims the prosecution's examination of Lowden, and especially the questions concerning Lowden's out-of-court "confession," severely prejudiced petitioner's opportunity for a fair trial and that this prejudice was of constitutional dimension.

We agree that one cannot safely characterize these questions drawn from the use of Lowden's "confession" as "minor lapses through a long trial." United States v. Hiss, 185 F.2d 822, 832 (2 Cir. 1950), cert. denied, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683 (1951). Despite the sustaining of defense counsel's objections to the last two questions and the subsequent act of the trial judge in admonishing the jury that these questions and all other material that had been excluded from evidence was to be disregarded by them in their deliberations one is forced to conclude that petitioner was probably prejudiced by the prosecution's conduct. It would appear likely that the State was attempting to bolster a somewhat uncertain case dependent upon circumstantial evidence by hoping that the jurors would consider the use of Lowden's out-of-court statements as independent factual evidence tending to prove that petitioner was guilty of the murder charged.

Assuming that petitioner was indeed prejudiced the issue resolves itself into whether this prejudice constituted a denial of petitioner's right to due process of law.

Petitioner claims he was unable to cross-examine Lowden as to the truth of the statements contained in his "confession" to which the prosecution drew the jury's attention under the guise of impeaching Lowden's credibility. Therefore, relying upon Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) he argues that he was denied the right of cross-examination secured by the confrontation clause of the Sixth Amendment and made obligatory on the states by the Fourteenth Amendment. But Douglas is distinguishable on two important grounds. First, in the present case, but not in Douglas, the trial judge admonished the jury to disregard much of the prejudicial material brought out by the prosecutor while cross-examining his own witness, and to draw no inferences unfavorable to the petitioner from this material.[4] We hold that no Douglas claim is tenable as to the material so struck, for in Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), the U. S. Supreme Court appears to indicate that any prejudice that might result from such an examination can be cured by cautionary instructions to the jury. Id. at 187, 83 S.Ct. 1151. We have no reason

---

4. For example, as stated in the opinion, objection to the final two questions put to Lowden by the prosecution concerning Smith's possession of a gun and "a burst of fire from Smith's gun" were sustained, the questions were struck, and the jury instructed to disregard them.

to hold that the instruction the court gave in the present case did not cure any prejudice that may have existed. Similar cautionary instructions have been held sufficient to cure errors potentially much more serious. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957) (admonition that confession is only relevant in determining guilt of confessor). See also United States v. Maloney, 262 F.2d 535, 538 (2 Cir. 1959).

■ Some questions put to Lowden by the prosecutor which, even though they went unanswered, may have tended to incriminate petitioner from the mere asking of them, may not have been struck prior to the jury's deliberation.[5] It is as to the possible prejudice arising from the putting of these questions that the petitioner's reliance upon Douglas is most substantial. In turning to the merits of petitioner's claim of prejudice it is first important to dispose of several possible distinctions between the present case and Douglas that are not persuasive. The fact that Lowden's refusal to answer the prosecution's questions was clearly groundless should not serve as a distinguishing factor; in Douglas the Court felt Loyd's refusal to answer was in itself crucial, the validity of his reasons for refusing was unimportant, 380 U.S. 420, 85 S.Ct. 1074. The fact that Lowden chose not to respond only to certain questions is not a distinction with a difference; he chose not to respond to several improper prejudicial questions. The danger, of course, was the same danger that was present in Douglas, that the "jury might improperly infer both that the statement had been made and that it

was true." 380 U.S. at 419, 85 S.Ct. at 1077.

Nevertheless—and this is the second critical difference between the present case and Douglas—here petitioner could have quizzed Lowden and brought out the facts surrounding the taking of Lowden's "coerced confession" and thus established that Lowden's statement read to the jury by the prosecution, if it were in fact coerced, was not to be believed. Counsel for petitioner at trial chose not to cross-examine; it cannot be said that he was unable to do so.[6]

■■ As to the many other allegations of prejudice that petitioner advances we need comment, in view of the careful opinion of the district judge, on but one. Appellant contends that the testimony of a material witness, Edith Springer, was perjured, and that as a consequence, the conviction must be set aside. Of course, if, in fact, Springer lied at trial and the prosecution knew when she testified that she was lying, petitioner's conviction would have been obtained in violation of the Fourteenth Amendment's requirements of a fair trial. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). But petitioner produces no proof that the prosecution suborned perjury; after an extensive hearing the district court found that Springer's testimony was not perjurious; and so Mooney is inapposite. All of petitioner's other allegations that he was denied the protection of his constitutional rights are either frivolous, irrelevant, mere conclusions of fact, or do not raise constitutional questions. We can add nothing to the treatment of these

---

5. For example, it is not clear that the trial court struck the question concerning Smith's presence at the yacht club on the night of the murder.

6. A distinct line of reasoning leading to the same result suggests itself if we center attention on all the questions the prosecution addressed to Lowden and to which petitioner's objections were sustained. Apparently Lowden never had an opportunity to answer, or to refuse to answer, these questions. It might be ar-

gued that a Douglas claim is tenable only if the question is put to the witness and he refuses to answer, because only then are the inferences adverse to the defendant that arise from the silence of the witness caused by the witness. If the defendant objects to the question and the objection is sustained, any adverse inferences arising from the silence of a witness are caused by and are the inevitable result of the defendant's trial strategy.

allegations as contained in the able opinion of Judge Zampano below.

The court is indebted to assigned counsel, Attorney Paul W. Orth of the Connecticut Bar, who with ability and diligence represented petitioner on this appeal.

Affirmed.