Allan L. ROBBINS, Warden, Maine State
Prison, Respondent, Appellant,

v.

Clifford G. SMALL, III, Petitioner,
Appellee.

No. 6802.

United States Court of Appeals
First Circuit.

Jan. 31, 1967.

John W. Benoit, Asst. Atty. Gen., with whom Richard J. Dubord, Atty. Gen., was on brief, for appellant.

James R. Desmond, Portland, Me., for appellee.

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

The only question raised by this appeal is whether petitioner Small's conviction for robbery in Maine Superior Court was obtained in violation of the Confrontation Clause of the Sixth Amendment. Basically, the answer depends on whether the prosecutor's conduct in the interrogation of a witness at the trial deprived petitioner of his right of cross-examination. On appeal from his conviction, Small contended that it did—but the Supreme Judicial Court of Maine decided otherwise and affirmed the conviction.[1] Petitioner now raises this same constitutional question in the instant habeas corpus proceeding and cites the leading case of Douglas v. State of Alabama, 380 U.S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934 (1965) in support of his contention.

After hearing,[2] the district court found that the conduct complained of came within the principles set forth in *Douglas*

1. A majority of the court held that no constitutional question was involved and that any prejudice Small may have suffered by reason of the prosecutor's conduct was cured by the trial court's charge. State v. Small, Me., 219 A.2d 263 (1966), but see Chief Justice Williamson's dissenting opinion at page 269.

2. The parties agreed that petitioner's right to habeas relief may be determined upon the record of the trial in the State Superior Court and on the opinions of the Supreme Judicial Court—thus obviating an evidentiary hearing.

and entered an order vacating petitioner's conviction and sentence.[3]

The essential facts are not in dispute. On the concluding day of petitioner's two day trial, the State called as its final witness an inmate of the state prison named Palmer, who had previously given the police a signed statement implicating the petitioner.[4] Early in the interrogation this witness claimed his Fifth Amendment privilege. Thereupon the prosecutor resorted to asking him a number of leading questions based on his signed statement which Palmer also refused to answer on self-incrimination grounds.[5] Despite the witness's repeated refusal the prosecutor continued to confront him with further detailed leading questions, also based on his statement, which the witness declined to answer on the same grounds. In all, Palmer was asked and he refused to answer some fourteen such questions, which the prosecutor formulated from the witness's signed statement that he was holding in his hand while asking them. The inferences, particularly from the last six questions, were especially damaging to petitioner's case.[6] It is important to mention at this point that Palmer's statement was not admitted nor was it ever offered in evidence.

At the conclusion of Palmer's interrogation, petitioner's counsel requested that the jury be instructed *immediately*, not to consider any of these fourteen questions as evidence against his client but the trial judge denied this request on the ground that he would deal with this matter in his charge. Also, petitioner's subsequent motion for a mistrial was denied.[7] The trial judge, in the course of his charge, dealt at some length with the subject of the prosecutor's questions and the witness Palmer's refusal to answer them.[8]

In calling Palmer it would appear that the State was attempting to bolster its somewhat uncertain case against the petitioner. Up to that point in the trial the only significant testimony was that of the alleged robbery victim. He identified the petitioner as the man who assaulted him and testified that immediately thereafter, when he regained his composure, he discovered that eighty dollars was missing

---

3. Small v. Robbins, 258 F.Supp. 621 (D.C. Me.1966).

4. It does not appear whether Palmer's confinement had any relation to the robbery but it does appear that he was questioned by police on the day of the robbery and made a statement.

5. Although the prosecutor did not tell the jury what he was using as the basis for his leading questions, this could be readily inferred by them early in the questioning; particularly from two questions put to the witness after he first claimed the privilege, (1) did you make a statement to the Portland police on the day of the alleged robbery and (2) was it in connection with a case against Small? The witness refused to answer both questions. The record shows that the court and petitioner's counsel knew that the prosecutor's reference was to the signed statement previously made to the police by this witness. They also knew its contents.

6. But they were allowed over the repeated objections of petitioner's counsel who had already unsuccessfully complained that the prosecutor by using these leading questions was "getting to the jury what he probably hoped this man's testimony would be." All fourteen questions may be found in the district court opinion and in the State court opinion, supra.

7. He based this motion on the very pertinent ground that the prosecutor's questions "are so harmful and prejudicial that they can't possibly be cured by a charge."

8. He very carefully instructed the jury that Palmer was clearly within his rights in invoking his Fifth Amendment privilege; that he gave no evidence beyond stating his name, his present and former address and that he knew Small; that they were not to draw any inferences from anything Palmer did not say nor speculate on what his answers might have been if he had chosen not to invoke the privilege; and finally, that they were not to draw any inferences from the prosecutor's questions.

from his pants pocket. But he did not testify nor was there any evidence in the case that this petitioner took the money.

On the basis of Palmer's signed statement the prosecutor had reason to believe that this witness would supply the much needed evidence on this element of the crime. When Palmer invoked the privilege the prosecutor immediately sought to accomplish the same result, not by admissible evidence, but through impermissible inferences from his own leading questions.[9] The fourteen questions, if answered in the affirmative, would have furnished evidence on practically every essential element of the crime. Thus, as in *Douglas,* they "clearly bore on a fundamental part of the State's case against petitioner" and "formed a crucial link in the proof". Douglas v. State of Alabama, supra at 419 and 420, 85 S.Ct. at 1077.

When it became apparent to the prosecutor that this witness was broadly claiming the privilege,[10] basic fairness required that he discontinue his leading questions. Yet he persisted with at least six even more damaging ones, which by this time he knew or certainly should have known the witness would not answer.[11] But that is only part of it. The trial court's ruling permitting the prosecutor's leading questions involved more than just an exercise of the court's discretion, as the State contends. It cut much deeper. The prosecutor, through these repeated questions, indirectly but effectively brought to the jury's attention the substance of a statement that was not in evidence and, therefore, not subject to cross-examination. This deprived the petitioner of a fundamental right secured by the Confrontation Clause of the Sixth Amendment—recently made applicable to the states. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Douglas v. State of Alabama, supra. The prosecutor not being a witness, the inference that the statement he was holding in his hand was Palmer's could not be tested by cross-examination. Palmer could not be cross-examined upon a statement imputed to but not admitted by him. Furthermore, as in Douglas, 380 U.S. at 420, 85 S.Ct. at 1077 the "inferences from [the] witness's refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."

The only remaining question is whether this prejudice was cured by the court's charge. We think not. It is true that this is not a case like Fletcher v. United States, 118 U.S.App.D.C. 137, 332 F.2d 724, 727 (D.C. Cir. 1964), where the instruction "left the situation much in doubt."[12] Nor is it one where the

---

9. Among the questions he put to Palmer were these four:
   "I ask you, down in the Forest City Diner shortly after you left Mr. Small off uptown, did he give you some money?"
   "Did he give you some money down there?"
   "Did Mr. Small tell you he got $80 or $40?"
   "Which one of you went over to the cashier and had a bill broken, down at the Forest City Diner?"
   Although upon objection the last two were withdrawn, obviously this essential but previously lacking direct "evidence" of robbery was indirectly presented to the jury via these repeated questions.

10. Chief Justice Williamson points out that this should have become apparent to him early in the interrogation when the witness refused to answer whether he had made a statement to the police and no later than when he refused to answer the next question as to whether this statement was in connection with a case against Small. In any event, from the witness's previous refusals this must have been conclusively apparent to the prosecutor before he asked the last six questions.

11. The fact that the prosecutor did not originally know that the witness intended to claim the privilege does not excuse his subsequent conduct nor is it of any consequence that in asking the questions he was not improperly motivated. The resulting prejudice was the same.

12. The trial court's charge, particularly on the issues raised by the witness Palmer's refusal to answer, was clear and forceful. The court stated "You will not, I instruct you with as much emphasis as

prejudice inherent in the denial of the right of cross-examination constituted only a "minor lapse"—later cured by the charge. United States v. Hiss, 185 F.2d 822, 832 (2d Cir. 1950), cert. denied, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683 (1951). In the instant case the error is substantial and the resulting prejudice extreme. Here the jury was subjected to the sustained impact of a series of repeated, leading questions with no cautionary admonition from the court until the very end of the trial. Although the charge was a forceful one, the inferences already firmly implanted in the minds of the jurors could not thereby be erased. Where, as here, the inferences from the witness's refusal to answer added critical weight to the State's case, in a form not subject to cross-examination, in our opinion the error is such that it cannot be cured by the court's subsequent charge—however forceful this charge may be.

The State vigorously contends that Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), affirming our opinion in 301 F.2d 314 (1st Cir. 1962), and the recent case of United States ex rel. Smith v. Reincke, 354 F.2d 418 (2d Cir. 1965), cert. denied, 384 U.S. 993, 86 S.Ct. 1896, 16 L.Ed.2d 1010 (1966), are more in point here than Douglas. In Namet only evidentiary trial error was involved. No constitutional question was presented. In addition, the few relatively insignificant claims of privilege in that case were at most only cumulative support for an inference that was already well established by the non-privileged portion of the witness's testimony. Thus, Namet is not like the instant case where Palmer's refusal to testify was the only source of the unfavorable inference against the defendant. Finally, it should be mentioned that the defendant in Namet not only failed to ob-

ject to the prosecutor's activity but at times appeared to acquiesce in it and attempted to use it to his advantage.

We are frank to say that we cannot accept either the reasoning or the result reached by the court in Reincke. The assertion in Reincke that the defendant might have established by cross-examination that the confession was coerced does not go far enough. A confession given unwillingly may nevertheless be true. On the basic issue of truth no cross-examination could have been had either in Reincke, or in the instant case, where the witness claimed his constitutional privilege. Furthermore, for reasons already stated, we cannot agree with the court in Reincke that Douglas v. State of Alabama is also distinguishable on the ground that Namet "appears to indicate that any prejudice that might result from such an examination can be cured by cautionary instructions to the jury." In any event, the effect of the prosecutor's improper questioning in the instant case seems to us more substantial than it was in Reincke.

We would be closing our eyes to reality were we to find that the court's charge cured the prejudice that resulted to the petitioner under the circumstances here. In view of the large number of leading questions asked, the relevance of proving petitioner's possession of money on the day in question and the importance of this final witness generally to the State's proof in this relatively short trial, we cannot say that the jury did not give some weight to the impermissible inferences raised by the witness's refusal to answer the prosecutor's questions.

In our opinion this case comes within the ambit of Douglas v. State of Alabama, supra and with due respect to the State court we hold that the principles laid down in Douglas were violated here.

Affirmed.

I am capable, undertake to speculate upon what might have been his [Palmer's] answers had he chose not to invoke the constitutionally guaranteed privilege against self-incrimination * * *." See also n. 8.