**Reginald L. SMITH, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12528.**

District of Columbia Court of Appeals.

Argued June 30, 1978.

Decided Oct. 11, 1978.

Hugh O'Neill, Washington, D. C., appointed by the court, for appellant.

Charles L. Hall, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Lillian A. McEwen, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, NEBEKER and FERREN, Associate Judges.

KELLY, Associate Judge:

Appellant's first trial for armed robbery, robbery, and assault with a dangerous weapon[1] ended in a mistrial. At his second trial appellant was convicted by a jury of armed robbery and sentenced to a term of

---

1. D.C.Code 1973, §§ 22–2901, –3202; –2901; and –502, respectively.

imprisonment of ten to thirty years. We affirm.

The facts developed by the prosecution are that on February 26, 1976, at about 7:00 p. m., an armed man, wearing an orange-colored ski mask and a long brown leather coat, entered a Gino's Restaurant at Georgia and Alaska Avenues, N.W., and took approximately $210 from the cash registers which he had forced the manager and an employee to open. Four employees other than the manager were in the restaurant at the time. The manager and one other employee could not identify the robber at the lineup. One employee tentatively identified appellant; one picked appellant and another man as persons who most nearly resembled the robber. The last employee, Robert Thames, Jr., then age 16, recognized appellant and told police his nickname and the neighborhood where he resided. The witness claimed to have seen appellant before in the same ski mask and coat. He identified appellant's photograph from a photographic array, identified appellant in the lineup, and made an in-court identification at trial. At the time of the second trial, Mr. Thames was incarcerated in Maryland as a juvenile offender.

## I

Appellant first claims that the restriction of counsel's cross-examination of the witness Thames with respect to his juvenile record, for impeachment purposes, was error. When cross-examination is allowed but curtailed, the specific circumstances must be closely scrutinized to evaluate the effect of the limitation. *Springer v. United States*, D.C.App., 388 A.2d 846, 855 (1978).

Thus, in reviewing claims of error based upon the trial court's excessive restriction of cross-examination, the standard of review employed by this court will depend upon the scope of cross-examination permitted by the trial court measured against our assessment of the appropriate degree of cross-examination necessitated by the subject matter thereof as well as the other circumstances that prevailed at trial. We will first examine the

record to determine whether any such error committed is of constitutional dimension—*i. e.,* whether the trial court has permitted sufficient cross-examination to comport with the requirements of the Sixth Amendment right to confrontation. Where examination of the record shows that the trial court's curtailment of cross-examination rises to the level of abridgement of the defendant's constitutional right to effective cross-examination, we must then decide whether such constitutional error by the trial court is of such magnitude as to require reversal per se . . . . [*Id.* at 855–56.]

Before beginning his cross-examination of Mr. Thames, appellant's trial counsel approached the bench and made a proffer as to a proposed line of questioning. Counsel's theory was that Thames might state, in response to questions, that he had identified appellant as the perpetrator of the robbery because "he (Thames) was a law abiding citizen." Counsel then intended to show that the witness was not a law abiding citizen by bringing out the fact that Thames had a juvenile record and was currently residing at a juvenile correction facility. The trial court denied counsel's request, but in no other way limited his cross-examination of the witness.

A primary interest secured by the Sixth Amendment's right to confrontation of adverse witnesses is the right to cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Although the right to cross-examination is fundamental, it is not unlimited. The trial court has considerable discretion to control cross-examination, and may restrict the subject of inquiry if the danger of unfair prejudicial effect of the evidence outweighs its probative value. *See Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 77, 75 L.Ed. 736 (1931); *Springer v. United States, supra* at 854–55; *United States v. Daniels,* 528 F.2d 705, 709 (6th Cir. 1976). *See also,* Fed.R. Evid. 403, 611(b). However, "some meaningful degree of cross-examination must be

allowed," *Springer v. United States, supra* at 854, since the foreclosure of all effective cross-examination by the trial court may be constitutional error which requires no showing of prejudice. *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed. 314 (1966).

The trial court here relied on *Brown v. United States,* 119 U.S.App.D.C. 203, 338 F.2d 543 (1964), as authority for restricting the cross-examination. In *Brown,* the court held that a prior adjudication of delinquency may not be used to impeach the general credibility of a witness.[2] *See also, Thomas v. United States,* 74 U.S.App.D.C. 167, 169–71, 121 F.2d 905, 907–09 (1941).

Appellant challenges the continued validity of this principle, however, in light of the Supreme Court's opinion in *Davis v. Alaska, supra.* In *Davis,* the Court stated that a criminal defendant's right to cross-examine adverse witnesses as guaranteed by the Sixth Amendment is paramount to the policy of protecting the anonymity of juvenile offenders. *Id.* 415 U.S. at 320, 94 S.Ct. 1105. The Court held that the trial court erred in not allowing the cross-examination of a key prosecution witness to show that the witness was on probation following an adjudication of juvenile delinquency. The defendant had a right, the Court said, to show that the witness was biased because of his vulnerable status as a probationer. *Id.* at 316–18, 94 S.Ct. 1105.

The facts of the instant case present a different situation from that before the Supreme Court in *Davis v. Alaska.* In that case

> petitioner's counsel made it clear that he would not introduce [the witness'] juvenile adjudication as a general impeachment of [his] character as a truthful person but, rather, to show specifically that at the same time [the witness] was assisting the police in identifying petitioner, he was on probation for burglary. From this petitioner would seek to show—or at least argue—that [the witness] acted out of fear or concern of possible jeopardy to his probation. [*Id.* at 311, 94 S.Ct. at 1108.]

In the case at bar, counsel for appellant did not proffer, nor does the record indicate any reason why Mr. Thames' juvenile record or place of residence would make his testimony partial or biased. Hence, the proffered cross-examination here was intended simply as a general impeachment of the witness' credibility.

There is an inherent difference between cross-examination intended as a general attack on the credibility of a witness and cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of a witness. *See Davis v. Alaska, supra* at 316, 94 S.Ct. 1105; *Springer v. United States, supra* at 855; *Gillespie v. United States,* D.C.App., 368 A.2d 1136, 1137 (1977).

▪ "[B]ias is always a proper subject of cross-examination." *Hyman v. United States,* D.C.App., 342 A.2d 43, 44 (1975). And, the curtailment of such cross-examination by a trial court must be reviewed in terms of whether it is constitutional error. *See Davis v. Alaska, supra* 415 U.S. at 318, 94 S.Ct. 1105; *Brookhart v. Janis, supra* 384 U.S. at 3, 86 S.Ct. 1245; *Springer v. United States, supra* at 856; *Gillespie v. United States, supra* at 1138. However, the Constitution does not confer a right in every case to impeach the general credibility of a wit-

---

2. The court in *Brown v. United States, supra,* noted that D.C.Code Annot. § 14–305 (Supp. III 1964) (precursor to D.C.Code 1973, § 14–305) provided that the credibility of any witness who testifies may be impeached by proof of any felony conviction or by proof of conviction of any misdemeanor involving dishonesty or false statements. It was correctly recognized, however, that a juvenile delinquency proceeding is not a criminal prosecution and does not result in a conviction of a criminal offense. *Brown v. United States, supra* 119 U.S.App.

D.C. at 207, 338 F.2d at 547. *See* D.C.Code 1973, § 16–2318; *District of Columbia v. M. E. H.,* D.C.App., 312 A.2d 561, 562 (1973); *In re J. T.,* D.C.App., 290 A.2d 821, 823, *cert. denied,* 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972). Therefore, it was held to be error for the prosecutor to bring out in cross-examination for general impeachment purposes, the fact that a witness had been adjudicated a juvenile delinquent. *Brown v. United States, supra* 119 U.S.App.D.C. at 208, 338 F.2d at 548.

ness through cross-examination about his past delinquency adjudications or criminal convictions. *Davis v. Alaska, supra* 415 U.S. at 321, 94 S.Ct. 1105 (Stewart, J., concurring). In fact, in the context of impeachment of general credibility, evidence of a prior conviction usually is inadmissible if the conviction resulted from a juvenile adjudication. *See Brown v. United States, supra; Thomas v. United States, supra. See also* Fed.R.Evid. 609(d); *United States v. Decker,* 543 F.2d 1102, 1104–05 (5th Cir. 1976), *cert. denied sub nom. Vice v. United States,* 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977); *United States v. Lind,* 542 F.2d 598, 599 (2d Cir. 1976), *cert. denied,* 430 U.S. 947, 97 S.Ct. 1585, 51 L.Ed.2d 796 (1977). Hence, we conclude that the trial court's restriction of the impeachment of Mr. Thames' general credibility by cross-examination regarding his juvenile record was not inconsistent with the Sixth Amendment's confrontation clause.

■ Having made such a determination, our appellate review must focus on whether the trial court abused its discretion in so restricting the cross-examination of the witness. The trial court's ruling must stand unless an abuse of discretion mandating reversal is shown. *Springer v. United States, supra* at 856. *See, e. g., Flecher v. United States,* D.C.App., 358 A.2d 322, 323, *cert. denied* 429 U.S. 977, 97 S.Ct. 486, 50 L.Ed.2d 585 (1976); *United States v. Houghton,* 554 F.2d 1219, 1225 (1st Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). As we pointed out, the trial court in no other way limited appellant's cross-examination of Mr. Thames. We are not convinced on the record of this case, that the trial court abused its discretion. We cannot perceive that such impeachment might have affected the outcome. Therefore, appellant's assignment of error is rejected.[3]

## II

■ Appellant also contends that a mistrial was required after the government witness, Mr. Thames, contrary to the prosecutor's warning, testified on rebuttal that sometime in the past he had seen the appellant smoking marijuana. It is argued that the prejudicial effect of Mr. Thames' remark was so great as to require an immediate declaration of a mistrial. We disagree.

The remark was in response to one of the prosecutor's questions, and the trial court immediately ordered the answer stricken. It then cautioned the jury as follows:

When you heard me say strike, that information has nothing to do with anything involved here. Forget about that whole matter. When I say strike something, that means the jury is to eliminate that from its mind. It has nothing to do with the case whatsoever.

In its final instructions to the jury, the trial court again admonished them to disregard the remark it had ordered stricken.

We agree that it was improper to introduce evidence of appellant's past criminal activity in this particular setting. However, when viewed in context with the other testimony, and the curative measures taken by the trial court, we do not find the remark so prejudicial as to have required a mistrial or a reversal on appeal.

In reviewing a trial court's ruling, the applicable test for prejudice is:

[W]hether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken

---

3. Appellant also argues that the prosecutor should have produced Mr. Thames' name, address, and juvenile record pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). A record of a juvenile delinquency adjudication can be *Brady* material, *see Lewis v. United States,* D.C.App., ——

A.2d —— (1978). However, because on the record of this case this information was not "material" to the issue of guilt, we find this contention to be without merit. *See Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

to mitigate the effects of the error . . . [*Smith v. United States,* D.C.App., 315 A.2d 163, 166, *cert. denied sub nom. Jeffries v. United States,* 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 139 (1974), quoting from *Gaither v. United States,* 134 U.S. App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969) (citations omitted).]

See *Hill v. United States,* D.C.App., 367 A.2d 110, 113 (1977); *Harris v. United States,* D.C.App., 366 A.2d 461, 464 (1976); *Saunders v. United States,* D.C.App., 224 A.2d 473, 474 (1966).

The trial court relied on *United States v. Mackin,* 163 U.S.App.D.C. 427, 502 F.2d 429, *cert. denied,* 419 U.S. 1052, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974), in denying the mistrial motion. In *Mackin,* a case whose facts closely resemble those at bar, a government witness, when asked on direct examination to explain her relationship with one of the defendants, responded that the defendant had sold her heroin.[4] In that case, as here, the trial judge acted promptly in instructing the jury to disregard the testimony. In affirming the defendant's conviction, the *Mackin* court said:

> Assuming that the reference to [the witness'] sale of narcotics was error, we think it was cured by the prompt and decisive action of the district judge. [*Id.* at 435, 502 F.2d at 437.]

There is respectable authority which holds that a cautionary instruction by a trial judge to a jury can cure error which might otherwise be prejudicial to a defendant. *See, e. g., Frazier v. Cupp,* 394 U.S. 731, 735, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Carsey v. United States,* 129 U.S. App.D.C. 205, 207, 392 F.2d 810, 812 (1967); *United States v. Reincke,* 354 F.2d 418, 420–21 (2d Cir. 1965). And, we must presume, unless the contrary appears, that the jury understood and followed the court's instructions. *Burkley v. United States,* D.C.App., 373 A.2d 878, 881 (1977); *Hall v. United States,* 84 U.S.App.D.C. 209, 211, 171 F.2d 347, 349 (1948).

Appellant's proclivity to smoke marijuana was not a central issue in this case. Moreover, the fact that the jury was informed that he did, assuming the truth of Mr. Thames' remark, could not affect proof beyond a reasonable doubt that appellant had committed armed robbery. *See Hill v. United States, supra* at 114.

After pondering "all that happened without stripping the erroneous action from the whole," *Gaither v. United States, supra* 134 U.S.App.D.C. at 172, 413 F.2d at 1079, quoting *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), we believe that the judgment of the jury was not swayed by the witness's remark. The error was, in context, harmless. *Kotteakos v. United States, supra.* Accordingly, appellant's conviction on appeal is

*Affirmed.*

---

**4.** As a matter of degree, we recognize that the revelation to the jury that a defendant sold heroin is more prejudicial than a revelation that a defendant had smoked marijuana.