# United States Court of Appeals
## For the First Circuit

No. 19-1967

UNITED STATES OF AMERICA,

Appellant,

v.

DONNA M. ACKERLY, a/k/a DONNA KULMACZEWSKI,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Stephen E. Frank, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellant.
Michael Kendall, with whom Yakov Malkiel and White & Case LLP were on brief, for appellee.

November 24, 2020

**SELYA**, **Circuit Judge**.  A jury convicted defendant-appellee Donna M. Ackerly of three counts charging her with wire fraud, honest services wire fraud, and conspiracy to commit both types of wire fraud.  The district court granted Ackerly's motion for a new trial upon finding what it deemed to be a violation of the Confrontation Clause.  See U.S. Const. amend. VI.  Concluding, as we do, that the government has failed to show reversible error, we affirm the grant of a new trial.

## I. BACKGROUND

We begin by rehearsing the relevant facts and travel of the case.  On August 10, 2016, a federal grand jury sitting in the District of Massachusetts indicted Ackerly, along with Charles Garske, Richard Gottcent, and Michael Sedlak, on charges of wire fraud, honest services wire fraud, and conspiracy to commit both types of wire fraud.  See 18 U.S.C. §§ 1343, 1346, 1349.  The indictment alleged that the defendants were employees of Georgeson, Inc., a proxy-solicitation firm that advises publicly traded companies on matters requiring shareholder approval; that, between September 2007 and March 2012, the defendants conducted a fraudulent scheme, which consisted of bribing an employee of Institutional Shareholder Services, Inc. (ISS), a firm that provides voting advice to shareholders, in exchange for nonpublic information about ISS's proxy-voting advice; and that the

defendants concealed the scheme by falsely invoicing Georgeson's clients for at least a portion of the cost of the bribes.

Trial began on February 26, 2018, before a jury of twelve (which had been empaneled along with two alternate jurors). United States v. Garske, 939 F.3d 321, 326 (1st Cir. 2019), cert. denied, 140 S. Ct. 1121 (2020). During the trial, the district court excused three jurors for various reasons. See id. Although Garske, Gottcent, and Sedlak consented to proceed with a jury of fewer than twelve, Ackerly withheld her consent. See id. at 326-27.

Ackerly's refusal had a domino effect: the government refused to proceed with a jury of eleven unless all four defendants acquiesced. See id. at 326. Faced with this impasse, the district court declared a mistrial. See id. at 327.

Garske, Gottcent, and Sedlak responded to the mistrial by moving to dismiss the indictment against them on Double Jeopardy grounds. See id. On August 16, 2018, the district court ruled that the Double Jeopardy Clause barred the government from retrying Garske, Gottcent, and Sedlak and dismissed the indictment against them with prejudice. See United States v. Ackerly, 323 F. Supp. 3d 187, 200-03 (D. Mass. 2018). Following the government's appeal, we reversed. See Garske, 939 F.3d at 327, 336.

While that appeal was pending, the government proceeded to retry Ackerly. See id. at 336 n.4. Ackerly's separate trial

began on January 7, 2019.  In its opening statement, the government told the jury that the evidence would show that an ISS employee, "a man named Brian Zentmyer . . . secretly passed information about how ISS's clients were voting to one of Ackerly's colleagues at Georgeson, Michael Sedlak, and Sedlak passed that information on to Donna Ackerly and others."  Although Zentmyer had testified to that effect in the first trial and the government included him on its witness list for Ackerly's separate trial, the government chose not to call him as a witness the second time around.

In his place, the government called a cooperating witness, Keith Haynes.  Haynes — like Ackerly — was a senior account executive at Georgeson.  Haynes testified that he participated in a scheme to bribe Zentmyer with expensive tickets to sporting events and concerts in exchange for confidential information.  He also testified that others at Georgeson were involved in the scheme.  Along the way, Haynes recounted how he received emails from Sedlak containing confidential voting information and how he falsely billed Georgeson clients for some of the cost of the tickets.

On the last day of Haynes' testimony, defense counsel cross-examined Haynes about his decision to plead guilty.  Haynes responded that, at the time of his decision, he was unaware of provisions in ISS contracts that appear to presume voting

information to be nonconfidential unless an ISS client specified otherwise.

On redirect examination, the government sought to address Haynes' characterization of his knowledge at the time of his plea.  The following exchange transpired:

Q.   You were asked what you were aware of at the time you chose to plead guilty, correct?

A.   Correct.

Q.   You were aware -- Mr. Kendall asked you about Brian Zentmyer's cooperation agreement?

A.   About --

Q.   Do you recall being asked whether Brian Zentmyer was cooperating with the government?

A.   Yes.

Q.   You were aware at the time you pled guilty that Mr. Zentmyer had also pled guilty to being involved in a conspiracy --

     MR. KENDALL:   Objection.

Q.   -- to steal confidential ISS information in exchange for bribes?

The court sustained the objection and instructed the jury that "the admitted guilt of others really is not relevant to this specific defendant's guilt or non-guilt, as the case may be."

Ackerly nonetheless moved for a mistrial at the next break in the proceedings. The court denied the motion, suggesting that its corrective instruction following defense counsel's objection, combined with a reiteration in final instructions, would suffice to ward off prejudice. On the sixth day of trial, Ackerly renewed her motion for a mistrial. In a supporting brief, she argued that the government had violated the Confrontation Clause by "expos[ing] the jury to Mr. Zentmyer's plea through a prosecutor's comment, not through testimony." Denying this motion, the district court indicated that it had "revised the jury instructions on that point to try to more directly address the issue [Ackerly] raised in the motion."

The case went to the jury on the following day. True to its word, the court instructed the jury that "[a]rguments and statements by lawyers . . . are not evidence" and that "[q]uestions to witnesses are not evidence." Getting down to specifics, the court explained that "Mr. Haynes and anyone else who may have pled guilty may be presumed to have acted after an assessment of their own best interest, for reasons that are personal to them, but that fact has no bearing on Ms. Ackerly's guilt or innocence." Guilt by association, the court said, cannot support a conviction.

After the jury charge, Ackerly requested an instruction that the government had "violated [her] constitutional rights by

referring to [Zentmyer's] plea." The court denied that request, insisting that its curative instructions had defused any issue.

After deliberating, the jury convicted Ackerly. She subsequently moved, in the alternative, for a judgment of acquittal or for a new trial. The district court granted her motion for a new trial, and this timely appeal ensued. We have jurisdiction under 18 U.S.C. § 3731.

## II. ANALYSIS

The issue before us is whether the district court abused its discretion in granting Ackerly's motion for a new trial. In arguing the affirmative, the government mounts two principal contentions. First, the government contends that the Confrontation Clause is not implicated as a matter of law because the testimonial statement that the district court found prejudicial was never admitted into evidence. Second, the government contends that a single unanswered question, followed by multiple curative jury instructions, could not — as a matter of law — have violated the Confrontation Clause. And if either of these contentions is correct, the government says, it would mean that the district court applied too strict a standard of harmless-error review. Compare Chapman v. California, 386 U.S. 18, 24 (1967) (holding that an error of constitutional dimension can only be harmless if it is shown to be "harmless beyond a reasonable doubt"), with Kotteakos v. United States, 328 U.S. 750, 776 (1946)

(holding that a non-constitutional error is harmless unless the error is shown to have had a "substantial and injurious effect or influence in determining the jury's verdict"). We evaluate each contention in turn.

### A. Statement Not in Evidence.

As we approach the government's first claim of error, a threshold question looms. Ordinarily, we review a district court's grant of a new trial for abuse of discretion. See United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006). Here, the government entreats us to follow suit. Ackerly demurs, maintaining that the government is now attempting to advance an argument that it never advanced below. On that basis, Ackerly asks that we review the government's claim solely for plain error. See United States v. Madsen, 809 F.3d 712, 717 (1st Cir. 2016). We start, therefore, by evaluating whether the government "raise[d] [the issue] squarely in the lower court" so as to avoid the daunting plain error standard. United States v. Lilly, 13 F.3d 15, 18 (1st Cir. 1994); see also United States v. Taylor, 54 F.3d 967, 972-73 (1st Cir. 1995) (explaining that under plain error doctrine, "appellate courts will notice unpreserved errors only in the most egregious circumstances").

The record tells the tale. The motion for a new trial was not the first time that Ackerly raised the Confrontation Clause as an objection to the prosecutor's question; she first articulated

- 8 -

the argument in a written motion for a mistrial on the sixth day of the trial. She again articulated the argument after the district court had charged the jury, this time in the form of a request that the jury instructions be amended to state that the government had violated her confrontation rights. The district court rejected both proffers without awaiting the government's response. Consequently, the government's opposition to Ackerly's motion for a new trial was the first opportunity for the government to meet Ackerly's Confrontation Clause argument head-on.

In that motion, Ackerly set out her Sixth Amendment claim with conspicuous clarity. Specifically, she asseverated that "the government's disclosure of Zentmyer's plea violated her Sixth Amendment rights" because an "alleged coconspirator's guilty plea is a testimonial fact that cannot be admitted without an opportunity for cross-examination." She also disputed the effectiveness of the district court's curative instructions. All in all, Ackerly made it luminously clear that she objected to the prosecutor's question on Confrontation Clause grounds.

Responding, the government stated only that "Ackerly's contention that the government 'improperly disclosed Zentmyer's guilty plea' . . . is without merit." In this regard, it reminded the court of the conclusions that the court had reached when Ackerly raised the same objection earlier in the case: that "the government's question 'was a brief one, and [the court's]

- 9 -

instructions adequately addressed it.'"  The government went on to argue that "to the extent its question was error, that error was arguably invited" by Ackerly's counsel's statements suggesting that, when pleading guilty, Haynes was unaware that Zentmyer had not committed a crime.  In any event, the government said, the error "was cured" by the court's instructions.

Taken as a whole, the most generous configuration of the government's reasoning does not come within a country mile of a denial that the prosecutor's question is a testimonial fact that could not be revealed to the jury absent an opportunity for confrontation.  Although the government argued that the question was not "improper," its rationale for that proposition never dealt with whether asking the question presented a potential Confrontation Clause issue.  Instead — as the district court observed when granting the motion for a new trial — the government's response "essentially concede[d] the constitutional violation."

The government counters that its arguments below were adequately responsive under the ordinary new-trial standard because they denied that the government's actions prejudiced Ackerly.  See United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996) ("The remedy of a new trial . . . is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.'" (quoting United

- 10 -

States v. Indelicato, 611 F.2d 376, 386 (1st Cir. 1979))). In its opposition to Ackerly's motion, it denied that the question "irretrievably poisoned the proceedings," that the question "caused a miscarriage of justice," or that the jury considered the question in its deliberations. But whether the question was prejudicial is a materially different issue from whether the question violated Ackerly's constitutional rights. Cf. United States v. Earle, 488 F.3d 537, 542 (1st Cir. 2007) ("If a constitutional error has occurred, we must order a new trial unless the government has shown that any error was 'harmless' beyond a reasonable doubt."). And the government never contested the latter issue before the district court.

The short of it is that the specific argument that the government presses on appeal — that statements not admitted into evidence cannot, as a categorical matter, work a Confrontation Clause violation — is nowhere to be found in the record below. The unvarnished fact is that, in its opposition to Ackerly's new-trial motion, the government made no reference to the Confrontation Clause at all. The government's orphaned claim of error is, therefore, unpreserved. Cf. Lilly, 13 F.3d at 17-18 (finding claim of error unpreserved when "current version" of party's argument differed from that presented to district court). Accordingly, we proceed to evaluate it under the plain error rubric. See id. at 18 n.6.

- 11 -

To prevail on plain error review, the government must demonstrate "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [its] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Under this standard, the proponent of "plain error must carry the devoir of persuasion as to all four of these elements." United States v. Pinkham, 896 F.3d 133, 136-37 (1st Cir. 2018).

In this instance, the government cannot clear the second step of the "high" plain error "hurdle." United States v. Hunnewell, 891 F.2d 955, 956 (1st Cir. 1989). At that step, the government must show that the claimed error is "clear" or "obvious." United States v. Olano, 507 U.S. 725, 734 (1993). And to come within that taxonomy, the error must offend established law. See United States v. Bennett, 469 F.3d 46, 50-51 (1st Cir. 2006) (discerning no clear or obvious error in light of conflicting case law). In other words, only an "indisputable" error warrants correction on plain error review. United States v. Jones, 748 F.3d 64, 69-70 (1st Cir. 2014). It is against this backdrop that we proceed to examine the nature of the claimed error.

The government does not gainsay that a guilty plea constitutes a testimonial statement under Crawford v. Washington, 541 U.S. 36 (2004). In Crawford, the Supreme Court held that the

- 12 -

Confrontation Clause bars the admission of a witness's testimonial statement against a criminal defendant unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness. See id. at 53-54. A guilty plea is the kind of statement that we previously have found to fall within the compass of the Confrontation Clause. See United States v. Ofray-Campos, 534 F.3d 1, 23 (1st Cir. 2008) ("[W]here a missing co-defendant does not testify, 'it is generally accepted that absent agreement, courts and prosecutors generally are forbidden from mentioning that a co-defendant has either pled guilty or been convicted.'" (quoting United States v. Carraway, 108 F.3d 745, 756 (7th Cir. 1997))).

Even so, the parties diverge in their interpretations of both Crawford and the reach of the Confrontation Clause. In the government's view, the core function of the Confrontation Clause is to foreclose the admission of testimonial statements when the defendant has not been afforded an opportunity to cross-examine his accuser. Under this view, "the Confrontation Clause is implicated only where testimonial evidence is actually admitted against the accused at trial." Ackerly, though, espouses a more expansive reading. She submits that the Confrontation Clause bars a criminal jury from considering statements by unconfronted, absent, or silent witnesses. As relevant here, Ackerly says that the Confrontation Clause not only prohibits the admission of

unconfronted testimonial statements but also prohibits bringing such statements to the jury's attention, regardless of whether they are actually admitted into evidence.

On plain error review, we need not plot the exact boundaries of the prophylaxis afforded by the Confrontation Clause. Instead, it is enough for us to determine whether the government's bright-line rule is one that is firmly settled in the case law, such that the district court's purported error — finding a constitutional violation even though an errant testimonial statement was not admitted into evidence — was plain. We turn to that determination.

Pre-Crawford case law suggests that statements not in evidence sometimes can trigger a violation of a defendant's right to confrontation. In Douglas v. Alabama, 380 U.S. 415 (1965), the prosecution called to the witness stand the defendant's convicted co-conspirator. Id. at 416. Because the co-conspirator intended to appeal his conviction, he exercised his Fifth Amendment right against self-incrimination and declined to respond to questions about the alleged crime. See id. Treating the witness as hostile, the prosecutor proceeded to cross-examine him. See id. The prosecutor began to read the witness's purported confession in the presence of the jury and paused every few sentences to ask the witness if he had made the recited statements. See id. Still invoking his privilege, the witness declined to answer these

questions.  See id.  Although the document that embodied the confession "was not offered in evidence," id. at 417, and both the prosecutor's reading of the document and the witness's refusal to answer "were not technically testimony," id. at 419, the Supreme Court concluded that the defendant's inability to cross-examine the witness deprived him of his right to confrontation because the prosecutor's "reading may well have been the equivalent in the jury's mind of testimony that [the witness] in fact made the statement," id.

Shortly after Douglas was decided, we interpreted the Confrontation Clause to bar the government from bringing to the attention of the jury, in the form of questions, certain information not admitted into evidence.  See Robbins v. Small, 371 F.2d 793, 796 (1st Cir. 1967).  There, the prosecution called a witness who had signed a statement implicating the defendant.  See id. at 794.  The prosecutor proceeded to ask the witness leading questions about his statement, but he refused to answer on Fifth Amendment grounds.  See id.  Following the defendant's conviction in a state court, we noted on habeas review that the answer to whether this exchange violated the Confrontation Clause "depend[ed] on whether the prosecutor's conduct in the interrogation of a witness at the trial deprived [the defendant] of his right of cross-examination." Id. at 793. Applying Douglas, we concluded that the proceedings contravened the defendant's

- 15 -

right to confrontation because the prosecutor, through a series of leading questions, "indirectly but effectively brought to the jury's attention the substance of a statement that was not in evidence and, therefore, not subject to cross-examination." Id. at 795.

Decades later, the Supreme Court decided Crawford and "depart[ed] from prior Confrontation Clause precedent in [some] respects." Williams v. Illinois, 567 U.S. 50, 70 (2012). But it is not readily apparent that Crawford abrogated Douglas. See Crawford, 541 U.S. at 57 (citing Douglas with approval for the proposition that the opportunity to cross-examine is dispositive). The upshot is that it remains unclear whether Crawford drew a line to exclude from Confrontation Clause protection testimonial statements not admitted into evidence but nonetheless communicated to the jury. We explain briefly.

The unconfronted statement before the Court in Crawford had been admitted into evidence under the so-called indicia-of-reliability test previously announced in Ohio v. Roberts, 448 U.S. 56 (1980). See Crawford, 541 U.S. at 40. The question of whether a statement not admitted into evidence might violate the Confrontation Clause was not before the Court. Rather, the Court was asked to determine only whether the admission of the statement was consistent with the Confrontation Clause. The Court held that the Confrontation Clause reflects a concern with "testimonial"

statements, id. at 51-52, and that such statements are not admissible unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination, id. at 53-54. These holdings do not inform a court in deciding whether a statement that was never admitted into evidence can — or cannot — violate a defendant's right to confrontation.

Here, moreover, the government concedes that the prosecutor's question constituted a testimonial statement. Thus, the government must show, at a bare minimum, that not all hearsay testimonial statements demand a prior opportunity for confrontation. The government offers not a shred of authority in this respect, and Crawford does the government no favors. See id. at 68 ("Where testimonial evidence is at issue, . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination."); id. at 68-69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."); cf. Jones, 748 F.3d at 69-70 (concluding that because defendant "does not cite — and we cannot find — any case . . . deciding [the issue] in his favor . . . we are worlds away from a plain error").

The government tries to prop up its proposed bright-line rule by reliance on the Supreme Court's post-Crawford decision in Williams. Williams, 567 U.S. at 50. But Williams is at best

peripheral to the rule for which the government is advocating in this case. There, the prosecution called an expert witness to testify about a forensic report not admitted into evidence. Id. at 61-62. The Court found no Confrontation Clause violation because the expert referenced the report to offer a basis for her expert opinion, and not to show the truth of the matter asserted. See id. at 71. The government here suggests that the fact that the expert report targeted as testimonial hearsay in Williams was not introduced into evidence, see id., was "significant" in the Court's rejection of the defendant's Confrontation Clause claim. But even assuming, for argument's sake, that the report's non-introduction into evidence was a significant factor — as opposed to a dispositive one — that assumed fact would not establish the categorical bar that the government seeks to have us impose. The more salient fact, we think, is that in Williams — just as in Crawford — the Court was not tasked with evaluating the applicability of the Confrontation Clause to statements not in evidence. See id. at 56-57. The critical circumstance in Williams was that the out-of-court statement was not admitted for its truth and, therefore, fell categorically outside the protection of the Confrontation Clause.[1] See id. at 72; see also id. at 79 ("[T]he

---

[1] Because the Williams Court considered the likelihood that the trier of fact would mistakenly take an inadmissible unconfronted testimonial statement as proof of the matter asserted, see Williams, 567 U.S. at 72-73 ("[I]f petitioner had

Confrontation Clause applies only to out-of-court statements that are 'use[d]' to 'establis[h] the truth of the matter asserted.'" (quoting Crawford, 541 U.S. at 59-60 n.9)).

Consistent with this view of the Court's reasoned Confrontation Clause jurisprudence, post-Crawford cases in this circuit have not read Supreme Court precedent to foreclose a Confrontation Clause violation simply because an unconfronted statement was not admitted into evidence. In Ofray-Campos, for example, the trial judge, in response to a jury note, disclosed to the jury the convictions of the defendant's alleged co-conspirators. 534 F.3d at 15-16. Although that disclosure was not in evidence, we ruled that the jury's exposure to this information violated the defendant's right to confrontation. See id. at 19. Nearly a decade later, we described that principle as well-established. See United States v. Morosco, 822 F.3d 1, 12 (1st Cir. 2016) ("[C]aselaw has long recognized that a jury's exposure to extrinsic information deprives a criminal defendant of . . . his right of confrontation." (internal quotations omitted)).

That this circuit has long recognized Confrontation Clause protection against extrinsic information disclosed to

---

elected to have a jury trial . . . there would have been a danger of the jury's taking [the expert's] testimony as proof [of the matter asserted].”), Williams seems to lend credence to Ackerly's contention that an improper testimonial statement communicated to a criminal jury — whether admitted into evidence or not — may support a Confrontation Clause claim.

juries, whether admitted into evidence or not, strongly suggests that the government's bright-line rule is open to question. Adding to the plausibility of this suggestion is our conclusion that no controlling case law firmly establishes that only statements admitted into evidence can violate the Confrontation Clause. On plain error review, these uncertainties are sufficient to tip the balance. We hold that to the extent the district court may have erred in treating the prosecutor's improper statement as working a Confrontation Clause violation — a matter that we do not decide — that error was neither clear nor obvious. And because the government has failed to carry the devoir of persuasion with respect to the second element of the plain error construct, plain error is plainly absent. See Pinkham, 896 F.3d at 136-37.

## B. **Effect of Subsequent Instructions**.

The government's second claim of error is that a single improper question, never answered and which was followed by curative instructions from the district court, could not amount to a violation of the Confrontation Clause. Once again, some stage-setting is useful.

The district court reached two distinct conclusions in ordering a new trial. First, the court concluded that the prosecutor's improper question violated Ackerly's Sixth Amendment right to confrontation. Second, the court applied the defendant-friendly harmlessness standard applicable to claims of

constitutional error, see Chapman, 386 U.S. at 24; Earle, 488 F.3d at 542, and concluded that the discerned violation was not harmless beyond a reasonable doubt.

During oral argument before this court, the government waived any objection to the district court's determination that the "harmless beyond a reasonable doubt" standard was not satisfied. But the government says that what transpired in this case did not sink to the level of a constitutional violation (and that the harmlessness standard the district court applied was therefore incorrect) because, inter alia, the prosecutor asked and withdrew a single question before the witness could answer it and the judge issued curative instructions.

Ackerly argues that the government's contention — that no error of constitutional dimension can result when the witness did not have an opportunity to answer the prosecutor's "isolated question" and curative instructions followed — is new on appeal. Accordingly, Ackerly asks that we review the government's second claim, like its first, only for plain error. See Madsen, 809 F.3d at 717. The government responds that its second claim is not new and, thus, asks that we review it for abuse of discretion. See Theodore, 468 F.3d at 56.

The government's boast that it preserved this claim of error below is belied by the record. In support, the government insists that the argument it now presents originated in the same

- 21 -

language that we assessed in connection with its first claim of error. This is wishful thinking: the government's reasoning below did not posit that the district court's curative instructions eliminated any possibility of a constitutional violation but, rather, posited only that the curative instructions nullified any prejudicial effect attributable to the improper question. And it is crystal clear that the government's specific argument — that a single question the witness did not have an opportunity to answer, immediately followed by curative instructions, did not as a matter of law violate the Confrontation Clause — was not made (or even hinted at) in the court below. We therefore review the government's second claim of error only for plain error.

Here, too, we start — and end — with the second step of the plain error construct. The government, in essence, contends that a single unanswered question presenting an unconfronted testimonial statement was an infraction too minimal to rise to the level of a constitutional violation when curative instructions followed the question. But the government's suggestion that the number of questions from the prosecutor factors into whether he violated a defendant's right to confrontation and that a single question is necessarily more innocent than a double whammy is simply not supported by the case law. See United States v. Marquez, 898 F.3d 1036, 1047-48 (10th Cir. 2018) (finding that "a single question and a single answer" violated the defendant's right

- 22 -

to confrontation); United States v. Spriggs, 591 F. App'x 149, 151-52 (3d Cir. 2014) (finding constitutional error because the "single statement" at issue "was testimonial"); see also Ryan v. Miller, 303 F.3d 231, 248-249 (2d Cir. 2002) ("[I]t is well established in this Circuit that lawyers may not circumvent the Confrontation Clause by introducing the same substantive testimony in a different form," id. at 248). Critically, the Supreme Court's watershed decision in Crawford does not turn in any way on the number of times that a prosecutor insults a defendant's Confrontation Clause rights. See Crawford, 541 U.S. at 68 ("Where testimonial evidence is at issue, . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination."). Rather, Crawford suggests that the substance of the statement at issue, namely, whether that statement is testimonial, can alone trigger Confrontation Clause protections. Where, as here, the government does not dispute that a statement was testimonial, a fair reading of Crawford supports a conclusion that a single unconfronted testimonial statement may work a violation of a defendant's right to confrontation.

What is more, the notion that curative instructions may downgrade a constitutional violation to some lesser status conflates the question of whether an error occurred with the question of whether the error was prejudicial. See Earle, 488 F.3d at 542. Effective curative instructions surely may lessen

- 23 -

the deleterious impact of an unconfronted testimonial statement, but they do not, as a matter of law, preclude a court from finding a Confrontation Clause violation. See, e.g., United States v. Maher, 454 F.3d 13, 23 (1st Cir. 2006) (finding Confrontation Clause violation when "testimony was immediately followed by a sua sponte [curative] instruction"). It is the unconfronted testimonial statement that comprises the Confrontation Clause violation, and curative instructions cannot suffice to put the genie back into the bottle.

In mounting this novel argument, the government relies heavily on Greer v. Miller, 483 U.S. 756 (1987). The government tells us that Greer stands for the proposition that a court's curative instructions ensure that the jury does not consider statements presented in questions in rendering its verdict. That is true as far as it goes — but it does not take the government very far.

The government overreaches when it says that such instructions "eliminate any possibility of a constitutional violation to begin with." This gloss misreads Greer.

Greer built upon an earlier case, in which the Supreme Court held that it would be "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial" where Miranda warnings communicate the right to that silence. Doyle v.

*Ohio*, 426 U.S. 610, 618 (1976). Relying on this rationale, the *Greer* Court held that a *Doyle* violation occurs only when the trial court "permit[s] the prosecution during trial to call attention to [the defendant's] silence." *Greer*, 483 U.S. at 763. The sequence of events in *Greer* — "a single question, an immediate objection, and two curative instructions" — forestalled a finding of the requisite attention. See *id.* at 766.

Because the claim in *Greer* was one of general "unfairness as to make the resulting conviction a denial of due process," *id.* at 765, an examination of whether an error occurred entailed a different standard than the one applicable here. When a defendant complains that the prosecutor's conduct rendered the trial fundamentally unfair, a court must examine "the entire proceedings" including any "special pains" taken by the trial court to correct errors. See *Donnelly* v. *DeChristoforo*, 416 U.S. 637, 643-44 (1974) (determining whether "remarks, in the context of the entire trial, were sufficiently prejudicial to violate respondent's due process rights," *id.* at 639); *Greer*, 483 U.S. at 766; see also *Hardy* v. *Maloney*, 909 F.3d 494, 501 (1st Cir. 2018). By contrast, when — as in this case — "specific guarantees of the Bill of Rights are involved, [a court must take] special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Donnelly*, 416 U.S. at 643. Consequently, curative instructions do not wipe the prosecution's slate clean

when the Sixth Amendment right to confrontation is implicated. See Maher, 454 F.3d at 21-23. So viewed, it is apparent that no applicable case law forbade the district court, as a matter of law, from concluding that an error of constitutional dimension had occurred. It follows — as night follows day — that we cannot find plain error. See Jones, 748 F.3d at 69-70.

## III. CONCLUSION

We need go no further. The district court found that, in the circumstances at hand, the prosecutor's improper question cannot be said to be harmless beyond a reasonable doubt. The government has challenged the standard of harmlessness employed by the district court, but it has eschewed any challenge to the substance of the district court's finding. Given our conclusion that no plain error inhered in the district court's choice of the applicable standard of harmlessness, the judgment of the district court must be

**Affirmed.**