Lawrence M. DORMAN, Appellant,

v.

**UNITED STATES, Appellee.**

No. 81–1302.

District of Columbia Court of Appeals.

Argued March 19, 1984.

Decided Oct. 2, 1984.

Opinion filed April 25, 1985.

Jo Ann Abramson, Washington, D.C., appointed by this court, for appellant.

Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time brief was filed, and Steven D. Gordon, Asst. U.S. Atty., Washington, D.C., were on petition, for appellee.

Silas Wasserstrom, Washington, D.C., appointed by this court, as amicus curiae.

Before PRYOR, Chief Judge, NEBEKER, MACK, NEWMAN, FERREN, BELSON and ROGERS, Associate Judges, and GALLAGHER and KERN,* Associate Judges, Retired.

BELSON, Associate Judge.

The reconsideration of this appeal gives the en banc court an opportunity to consid-

---

* Judge Kern was an Associate Judge at the time of argument. His status changed to Associate Judge, Retired, on May 25, 1984.

er this jurisdiction's law on impeachment of defendants by previous convictions.

■ Appellant contends that the sequence of the prosecutor's questions during appellant's cross-examination suggested to the jury that because appellant had been convicted of past offenses he must be guilty of the charged offense. A majority of a division of this court affirmed appellant's conviction of petit larceny, D.C.Code § 22–2202 (1981). *Dorman v. United States*, 460 A.2d 986 (D.C.1983). We vacated that opinion and granted rehearing en banc. We now affirm.[1]

## I

■ D.C.Code § 14–305(b)(1) (1981) controls the admission into evidence of a defendant's previous convictions. The section reads, in part:

> [F]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a criminal offense shall be admitted if offered, either upon the cross-examination of the witness or by evidence aliunde, but only if the criminal offense (A) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (B) involved dishonesty or false statement (regardless of punishment). A party establishing con-

viction by means of cross-examination shall not be bound by the witness' answers as to matters relating to the conviction.

The jury can infer from a witness' previous convictions that the witness may be untruthful in his present testimony. When the defendant is a witness in his own case, there is a danger that the jury will draw the impermissible inference from the defendant's past convictions that he is guilty of the current offense. The danger is especially great if the past crimes are similar to the current offense. But this court is not free to decide that the danger of prejudice to the defendant warrants barring impeachment by previous convictions. Congress has prescribed that certain convictions are relevant to a factfinder's credibility determinations. We are bound by Congress' policy decision. *Hill v. United States*, 434 A.2d 422, 429 (D.C.1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982).

■ It is within our province, however, to require procedures that minimize the risk that a jury will misuse the evidence of previous convictions which Congress has declared admissible. In that way we accommodate both Congressional policy and the interest of avoiding unnecessary prejudice to defendants. In past cases we have

---

**1.** In our order granting rehearing en banc, we asked the parties to address the following question:

> Given the admissibility of certain prior convictions as they bear on credibility, *see* D.C. Code § 14–305 (1981), why should not this court mandate a procedure in criminal cases which would require that the fact of any previous conviction used for impeachment purposes be placed before the jury by stipulation or otherwise through a statement by the trial judge at the conclusion of the witness' testimony, together with appropriate instructions?

After considering the arguments for and against adopting the proposed procedure, we have decided not to adopt it. This opinion mandates no new procedure for impeachment by previous convictions. Rather, it clarifies our previous case law on this subject and sets forth a standard by which particular instances of previous conviction impeachment are to be judged.

We add that appellant argues that two trial errors other than the improper impeachment also warrant reversal. First, he says that the prosecutor improperly expressed his personal opinion that appellant was guilty. The prosecutor began a cross-examination question by saying, "Mr. Dorman, at the time you committed the offense—." Upon appellant's objection, the prosecutor rephrased the question immediately. The trial judge twice instructed the jury that counsel's comments were not evidence. We find no error in the judge's denial of a motion for mistrial on this ground. Second, appellant contends that the trial judge erred in failing to give requested jury instructions on claim of right and on abandonment or loss of allegedly stolen property. On the facts of this case, we hold that the theory of the defense was adequately presented by the court's instruction that the jury could not convict appellant unless it found that he had had the specific intent to steal the radio.

recognized that the sequence of the prosecutor's questions on cross-examination can prompt the impermissible inference. For example, in *Fields v. United States*, 396 A.2d 522 (D.C.1978), appellant was charged with various armed offenses and with carrying a pistol without a license. The prosecutor opened his cross-examination of the appellant by asking:

Q. Now, Mr. Fields, you had a gun with you that night; didn't you?

A. No, sir.

Q. Are you the same Jesse Fields that was convicted in 1969 of carrying a pistol without a license?

Appellant replied that he was. *Id.* at 526. The prosecutor repeated the sequence, asking about appellant's previous conviction for possession of an unregistered firearm. We held that the questions about appellant's previous weapon convictions, asked "immediately after appellant had denied possessing a gun on the occasion of the offense charged, likely gave the jury the impression that evidence of appellant's prior conviction was being offered to rebut appellant's denial." *Id.* at 527. The questioning constituted reversible error.

In *Bailey v. United States*, 447 A.2d 779 (D.C.1982), a division of this court held that the following set of questions at the end of government cross-examination was plain error:

Q. You didn't try to rape her down there, is that right?

A. That's correct.

Q. Are you the same Phillip Bailey who on May 14, 1971, was convicted in the United States District Court for the District of Columbia of armed rape?

A. Yes, I am.

*Id.* at 781. We disagreed with the trial judge's conclusion that the prosecutor's pause before the question about the previous conviction provided a buffer sufficient to avoid a prejudicial juxtaposition of general denial and impeachment by conviction of a similar offense. *Id.* at 783.

In *Baptist v. United States*, 466 A.2d 452 (D.C.1983), we distilled some general rules from *Fields*, *Bailey*, and two nonbinding D.C. Circuit cases, *United States v. Henry*, 174 U.S.App.D.C. 88, 528 F.2d 661 (1976), and *United States v. Carter*, 157 U.S.App.D.C. 149, 482 F.2d 738 (1973). We now approve most of *Baptist*'s analysis. There are two general prohibitions. First, the government may not pair questions about a defendant's previous convictions for offenses similar to those charged with questions that elicit his general denial of the charged crime. *Bailey* exemplifies this prohibition. Second, the government may not pair questions about similar previous convictions with questions that elicit defendant's denial of a key element of the charged offense. *Fields* exemplifies this rule. The second proscription will be the more difficult to apply, because many cross-examination questions necessarily refer to elements of the charged crime, and a defendant's answer may imply a denial of the element.[2]

**2.** It is difficult for the additional reason that the determination of what is a key element of an offense will vary with the facts of a particular case. We recognize that it could be said that any time an element becomes the focus of a factual dispute, the defendant's denial of the facts relating to that element constitutes denial of a key element. Thus, prudence would dictate that previous conviction impeachment *not* follow a defendant's denial of any element of an offense. However, some elements do not relate directly to the actual commission of the criminal act itself, and immediate cross-examination about a previous criminal conviction may not create the sort of prejudice that *Fields* was concerned with. For example, in a case like *Fields* that involves carrying a pistol without a license, cross-examination following a denial of the element regarding licensure might not be unduly prejudicial.

We emphasize that the proscription reaches impeachment following *denial* of the element, not impeachment that follows inquiry merely into the circumstances surrounding or relating to the element. *Baptist*, 466 A.2d at 458–59 (no error where prosecutor did not ask impeaching question directly after defendant's denial that he was trying to steal items, but withheld impeachment until after he had questioned defendant regarding his handling of the property in question).

■ We observe that in some instances impeachment by previous convictions not similar to the charged crime may be so obviously misused as to become objectionable. On the other hand, impeachment by previous convictions juxtaposed with examination on matters related solely to credibility will ordinarily be unobjectionable.[3] Obviously we cannot set out in advance specific rules governing the innumerable varieties of examination that may take place in particular cases.[4] We can articulate only a general standard by which particular instances of impeachment can be judged. The test is whether the prosecutor's reference to a defendant's previous conviction is such that, under the circumstances, reasonable jurors would naturally and necessarily regard the manner in which the impeachment is accomplished as implying that the defendant is guilty of the crime charged because he was guilty of past crimes.[5] Our test focuses on the manner of impeachment because we acknowledge that to some degree the mere fact of previous conviction impeachment imparts "well-nigh inescapable prejudice on the issue of guilt." *Carter*, 157 U.S.App.D.C. at 151, 482 F.2d at 740. Since the test looks only to the manner of prior conviction impeachment and does not affect at all the determination of which prior convictions may be used to impeach, it does not conflict with the legislative policy expressed in D.C.Code § 14–305(b)(1). *See* H.R.REP. No. 91–907, 91st Cong., 2d Sess. 61–63 (1970).

■ We borrow our formulation from cases such as *(Harold) Brown v. United States*, 383 A.2d 1082, 1085 (D.C.1978), which analyze whether remarks by a prosecutor should be construed as impermissible comments on a defendant's failure to testify in his own defense. As in those instances, the court in monitoring impeachment by previous conviction should look to the jury's reasonable perception, using an objective, not a subjective, test.[6] We adopt

3. Ordinarily, there will be no reason the prosecutor cannot ask a question relating solely to credibility immediately prior to the impeachment. For example, the prosecutor can usually ask first whether defendant seeks to have the jury believe his testimony instead of that of a government witness or witnesses; or, if defendant has called friends or acquaintances as his witnesses, and their answers to questions about their relationship are such as to permit the introduction of extrinsic evidence, the prosecutor can question defendant about their relationship, thereby suggesting the bias of the witnesses. McCORMICK, LAW OF EVIDENCE at 81 (2d ed. 1972). The impeachment can follow. Of course, the impeachment itself should not be followed directly by a question eliciting a general denial or denial of a key element of the offense.

4. Recently, in *Reed v. United States*, 485 A.2d 613, 616 (D.C.1984), we noted a particular method of impeachment not proscribed by the statute or our decisions.

5. We observe that similar considerations are presented by a prosecutor's comments on previous convictions made in closing argument. *See, e.g., (Duane) Dyson v. United States*, 450 A.2d 432, 440–41 (D.C.1982).

6. The opinion of Judge Gallagher, in which he concurs in the result but disagrees with the holding that error was committed on defendant's cross-examination, questions whether the en banc court does indeed approve most of *Baptist's* analysis, as we state above at p. 459 (Gallagher, J., concurring in result at p. 474). The *Baptist* analysis is set forth at 466 A.2d at 458. Our analysis here is essentially the same as in *Baptist*, subject to the explanation here that we look not to the prosecutor's subjective intent or motive in impeaching by previous convictions, but rather to the jury's reasonable perception of that use. (Compare opinion of Gallagher, J., concurring in result at pp. 475–476, referring to prosecutor's motive.) That concurrence-in-result also suggests that the en banc court here effectively overrules this court's decision in *Baptist* and adopts the opinion of the judge who dissented from the vacated opinion of the division affirming the conviction on this appeal. *Dorman*, 460 A.2d at 991. We disagree. The dissent at division called for reversal. Moreover, it did not purport to set out an explication of the law concerning previous conviction impeachment, as we undertake to do here. The opinion of the division in *Baptist* understood the approach of the dissent at division in *Dorman* as one that "would appear by implication to rule out any use of impeaching questions after the defendant had responded to cross-examination dealing with the facts of the case, unless there had been a 'suitable break' between the previous questions and the impeachment." *Baptist*, 466 A.2d at 457. Our opinion in *Baptist* disagreed with so restrictive an approach, focus-

an objective test because our concern is with the impact upon the jury of the prosecutor's manner of impeachment by prior conviction rather than the motive or intent of the prosecutor.

 One important difference between our review of previous conviction impeachment and our review of prosecutorial comment on a defendant's failure to testify is that we apply different standards for harmless error in the two types of cases. Comments on a defendant's failure to testify plainly implicate his Fifth Amendment right to remain silent at trial, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), so we must test for harmless constitutional error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (conviction must be reversed unless error is harmless beyond a reasonable doubt). Previous conviction impeachment does not involve constitutional rights, except in a remote sense, so we use the less stringent harmless error test of *Kotteakos v. United States*, 328

U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (error is harmless if the court can say "with fair assurance ... that the judgment was not substantially swayed by the error").[7] And where a defendant has failed to preserve the point, we use the plain error test ("the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial....") *Watts v. United States*, 362 A.2d 706, 709 (D.C. 1976) (en banc).

*Baptist* suggested that harmless error analysis and the *Kotteakos* test were appropriate. *Baptist*, 466 A.2d at 459 n. 4. The D.C. Circuit agrees. *See Henry*, 174 U.S.App.D.C. at 95, 528 F.2d at 668. Our *Fields* and *Bailey* opinions did not mention harmless error analysis. In those two cases we held implicitly that the errors were so flagrant that they could not be harmless; we stated explicitly that no jury instruction could have cured the prejudice the defendants suffered. *Fields*, 396 A.2d at 528; *Bailey*, 447 A.2d at 783.

---

ing instead, as we do here, on cross-examination that elicits a general denial or a denial of a key element of the offense, as distinguished from any cross-examination at all concerning the facts surrounding the offense.

7. Of course any matter that affects the fairness of a trial may be said broadly to involve the defendant's due process rights, and the ultimate source of our authority to limit the manner of use of previous convictions, of course, is the due process clause.

Courts do not hold, however, that every trial error infringes a defendant's Fifth or Fourteenth Amendment due process rights and so requires application of the *Chapman* test. The due process clause guarantees only a fundamentally fair trial. *See Gideon v. Wainwright*, 372 U.S. 335, 341–42, 83 S.Ct. 792, 794–95, 9 L.Ed.2d 799 (1963). We have applied the *Kotteakos* test in many cases that involve trial errors of the same magnitude as those that may arise in connection with previous conviction impeachment. *See, e.g., Dyson v. United States*, 418 A.2d 127, 132 (D.C.1980) (prejudicial comments by prosecutor during rebuttal argument); *Smith v. United States*, 392 A.2d 990, 994 (D.C.1978) (erroneous admission of testimony that defendant had been seen smoking marijuana in the past); *Morris v. United States*, 389 A.2d 1346, 1348 n. 1 (D.C.1978) (erroneous limitation on defendant's

right under *Kitt v. United States*, 379 A.2d 973 (D.C.1977), to blunt impact of previous convictions by bringing them out himself on direct); *Ward v. United States*, 386 A.2d 1180, 1185 (D.C. 1978) (erroneous admission of factual details about defendant's previous convictions).

With respect to previous conviction impeachment, we held in *Dixon v. United States*, 287 A.2d 89 (D.C.), *cert. denied*, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972), that D.C.Code § 14–305 is not inherently violative of a defendant's Fifth Amendment due process rights. Yet we also held there that unless a limiting instruction accompanies the introduction of the previous conviction, the introduction violates the defendant's "substantial rights." *Dixon* 287 A.2d at 99–100. Cautionary instructions are crucial "in assuring the basic fairness necessary to uphold the constitutionality of the use of prior convictions." *Id.* at 99 (footnote omitted). A defendant's due process rights are in that sense implicated, then, if previous convictions are introduced in a way that does not sufficiently protect him from prejudice. Since *Dixon* we have been called upon to consider not only the prejudice that may arise from the introduction of previous convictions without accompanying instructions, but also the prejudice that may arise from juxtaposition of previous conviction evidence with certain cross-examination questions. *See, e.g., Fields* and *Bailey*.

In closer cases, however, a curative instruction could be important to our evaluation of whether a less blatant error was harmless.[8] The giving of the instruction, which informs the jury that it may use the previous convictions only to evaluate the defendant's credibility, would be only one factor in this court's assessment of harm; other factors would include the seriousness of the prosecutor's error and the weight of the evidence of defendant's guilt. *See Henry*, 174 U.S.App.D.C. at 95, 528 F.2d at 668; *Villacres v. United States*, 357 A.2d 423, 428 (D.C.1976).[9]

Finally, we note that our review of asserted error in this area will be aided greatly if we have the benefit of the trial judge's evaluation of the effect of the impeachment. Even if a prosecutor is scrupulously careful in bringing out a defendant's previous convictions, some prejudice to the defendant is unavoidable. The trial judge is in the best position to assess the impact of the particular manner of impeachment. Defense counsel should therefore object if he or she thinks error has been committed, and the trial judge should then evaluate the prosecutor's conduct. In appropriate cases, defense counsel should secure the trial judge's evaluation of prosecutorial use of a defendant's previous convictions by a motion for mistrial or a motion for new trial. We do not wish to encourage insubstantial or groundless objections or motions, of course, but we emphasize that defense counsel should ensure that the trial judge has the opportunity to rule upon the matter. Failure to raise the issue will leave a defendant in the position of having to establish plain error in order to prevail on appeal. *Watts*, 362 A.2d at 709.

## II

Having defined the precepts governing the use of previous convictions to impeach defendants, we now apply them to the case at hand.

Appellant was convicted of petit larceny, D.C.Code § 22–2202 (1981). The government alleged that he stole a radio from a man who appeared to be sleeping on a step but who was actually a plainclothes police officer acting as a decoy. On direct examination, appellant's counsel brought out one of his client's previous convictions and received a cautionary instruction. On cross-examination the following exchange occurred.

Q. Mr. Dorman, you are saying when Officer Green said he saw you go up to Sergeant Hickey on the steps, he is not telling the truth, is that right?

A. Yes, sir.

[Defense Counsel]: Objection.

THE COURT: No, I'll permit that question.

BY [the Prosecutor]:

Q. Is that correct?

A. Yes, sir.

Q. And when Officer Green said that he saw you take that radio from Sergeant Hickey, he was again not telling you the truth, is that correct?

A. Yes, sir.

Q. And when Officer Green said that he saw you walk away with that radio, he was again not telling the truth?

A. Yes, sir.

Q. And that when he said that you got 90 feet from Sergeant Hickey he was again not telling the truth?

A. Yes, sir.

Q. So essentially his entire testimony was just not true, is that right?

A. Yes, sir.

Q. And when Sergeant Hickey said that he saw you ten feet from him holding the radio, again, he was not telling the truth either, was he?

---

8. For a discussion of immediate cautionary instructions following such impeachment *sua sponte* or upon request, *see Dixon*, at note 7, 287 A.2d at 97–99.

9. We do not agree with the suggestion in *Fields*, 396 A.2d at 528, that such an error cannot be cured by instruction.

A. Yes, sir.

Q. He wasn't?

A. Right.

Q. So you never touched the radio, is that right?

A. Yes, sir.

Q. You just walked up to it, looked at it, walked down two steps and you weren't even touching it and all of these policemen arrested you for no reason at all, is that correct?

A. Yes, sir.

Q. Now Mr. Dorman, are you the same Lawrence Dorman that on December 21, 1973, was convicted of first degree burglary?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on the same date was convicted of attempted larceny?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on March 22, 1974, was convicted of assault with a deadly weapon, a gun?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on November 9th, 1971, was convicted of carrying a dangerous weapon, a gun?

A. Yes, sir.

[The Prosecutor]: I have no further questions, Your Honor.

■■■ Appellant's counsel did not object to this reference to previous convictions. On redirect, appellant's counsel brought out that appellant thought he had been appropriately punished for his previous offenses.[10] The judge repeated the usual cautionary instruction after redirect and in his charge to the jury.

■■ Appellant's defense hinged on his argument that he was telling the truth and that the police officers who said he took the radio were not. The prosecutor therefore directed cross-examination questions to appellant's credibility. This was a generally appropriate context in which to bring out previous convictions under § 14–305(b)(1). The last two questions before the impeachment by previous convictions, however, were not directed to credibility as were the questions that preceded them. We must decide whether these two questions elicited either a general denial of the larceny charge or a denial of a key element of that charge; if they did, then they should not have been juxtaposed with the prosecutor's very next questions about appellant's past burglary and attempted larceny convictions. We must weigh the impact of the cross-examination in the context of appellant's claim that the prosecutor's conduct amounted to plain error, for appellant neither objected nor moved for mistrial or new trial.

Although the last two questions before the previous conviction impeachment followed a series of questions directed generally to credibility, the two questions themselves were such that it was inappropriate to place them in juxtaposition with prior conviction impeachment. The first of them elicited appellant's flat denial that he had "touched" the radio. While, strictly speaking, "taking" rather than "touching" is an element of larceny, *see* Criminal Jury Instructions for the District of Columbia, No. 4.55 (3d ed. 1978), we have grave doubts that the jury would distinguish between "taking" and "touching" when all the government's evidence showed that appel-

---

**10.** The fact that appellant's counsel brought out one of appellant's previous convictions on direct and mentioned the convictions on redirect does not affect our analysis of the prosecutor's possible error. The prosecutor's authority to impeach defendant with previous convictions comes from D.C.Code § 14–305(b)(1). The fact that defendant "opened the door" in this manner would not give the prosecution license to exceed ordinarily applicable restrictions on prejudicial juxtaposition of such impeachment. Of course, if the manner in which defense counsel brought out the previous convictions reduced the prejudicial effect of the prosecutor's erroneous use of them, that factor would be considered in a harmless error or plain error analysis.

lant had picked up the radio and carried it away.

The second of the two questions preceding impeachment presented appellant with a summary of his account of the incident. He responded, predictably, with what was, in effect, a general denial of his guilt. Immediately thereafter, the prosecutor examined appellant on his previous convictions for burglary, attempted larceny, and other offenses.

We think that the jury would naturally and necessarily have taken this particular sequence of questions and answers as implying that appellant, convicted in the past of burglary and attempted larceny, had stolen the radio. Thus, the questioning constituted error.[11] The next question is whether the error, to which the defense made no objection, was plain error. We hold that it was not.

In deciding whether an error "jeopardize[d] the very fairness and integrity of the trial," *Watts*, 362 A.2d at 709, we must look at all the evidence presented at trial; *(Joseph) Brown v. United States*, 387 A.2d 728, 731 (D.C.1978) (examining whether error "could have so affected appellant's substantial rights as to cause a probable miscarriage of justice in light of the evidence produced by the government in this case"); *Adams v. United States*, 302 A.2d 232, 235 (D.C.1973) ("[i]t is ... appropriate for us to view the evidence as a whole in resolving this unpreserved issue").

The evidence against appellant in this case was overwhelming. The police officer who was acting as a decoy testified that he felt the radio being taken from his side. A few moments after the radio was taken, the officer opened his eyes and saw appellant walking away carrying the radio. A second officer watched appellant ap-

proach the decoy officer, pick up the radio, set it down, look in all directions, pick it up again, and walk away with it. The second officer testified that appellant was carrying the radio when the officer arrested him. Two other police officers who were sitting in a nearby taxi saw appellant carrying the radio. Appellant, the only defense witness, testified that he was merely looking at the radio when several officers jumped on him from behind.

Moreover, the trial judge instructed the jury three times that the previous convictions pertained only to appellant's credibility. That further reduced the possibility that the error undermined the very fairness of appellant's trial.

Even if appellant had objected to the erroneous use of his previous convictions, we would affirm under a harmless error analysis. In light of the overwhelming evidence and the giving of cautionary instructions, we could say with fair assurance that the jury's decision was not substantially swayed by the error.

In view of the foregoing, the judgment of conviction is

*Affirmed.*

PRYOR, Chief Judge.

I concur in the result reached in the majority opinion. Applying the same test that the majority employs, I do not think the trial court committed any error in the handling of impeachment questions and thus do not reach the issue of plain error.

NEBEKER, Associate Judge, concurring in the result and dissenting from the rationale.

After the *Luck*[1] decision, Congress expressly overturned it, and impeachment by prior conviction, under some strictures, was

---

11. The sequence of questions quoted above is troublesome for other reasons, as well. We recognized recently in *Carter v. United States*, 475 A.2d 1118, 1126 (D.C.1984), that "one witness may not express a view or an opinion on the ultimate credibility of another witness' testimony." Appellant has not raised this point on

appeal. Consideration of this point does not alter the conclusion we reach below that there is no plain error.

1. *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965).

declared permissible. D.C.Code § 14–305 (1981). With *Henry*[2] and *Carter*,[3] the trouble began again.[4] For too long this court has, on a case-by-case basis, struggled with such impeachment issues. We have taken disparate views on what constitutes improper timing of conviction impeachment, and to a large extent our decisions have depended upon panel composition. When we undertook to consider this troublesome issue en banc, it was to be expected that a rule could be announced which would end the need for case-by-case review. I submit that despite earnest and well-intentioned effort, we have failed completely in this endeavor.

The majority holding of error in this case is not from the fact of conviction impeachment but in the failure of the cross-examiner to obscure or divert focus on the important aspects of the offense before asking the impeachment questions. Thus, in the future the issue before us will be whether the diversion was good enough—another subjective review choice no doubt depending on panel composition. We have virtually guaranteed an appeal presenting the issue in every conviction where such impeachment occurs. *See Evitts v. Lucey*, —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (due process guarantees effective assistance of counsel on appeal). Moreover, the analysis in briefs and our decision will have to be detailed and protracted. We are burdened enough with our calendar. Now we figuratively shoot ourselves in the foot.

Indeed, very able counsel for a convicted appellant in a recent argument in another case presenting this issue[5] quite prophetically called such juxtapositional impeachment "medieval metaphysics" and urged us not to engage in such "fruitless" analysis. He asked for a "bright line" rule permitting case fact cross-examination or conviction impeachment but not both. Given our decision in this case, I find the proposal to have the trial judges tell the jury of previous convictions to be most attractive. (*See* majority opinion at 458, note 1.) We do not preclude that course; we refuse to require it. I encourage it.

I disagree as to the wisdom and legal basis for the law set out by the majority. I also take issue with the conclusion reached when this law is applied to the facts in this case.

There is nothing wrong with the type of impeachment present in this case. Congress has provided for it and intended that it be done. It, like all relevant evidence, is prejudicial (*i.e.*, hurtful to credibility) and properly so. Since the dawn of prior conviction impeachment, Congress has determined that the inescapable propensity prejudice, cured by an immediate instruction, is outweighed by credibility probativeness. The former has never been held to deny due process, despite the majority's hint that the source of our authority to limit conviction impeachment is the due process clause (majority opinion at 461–462, note 7).

---

**2.** *United States v. Henry,* 174 U.S.App.D.C. 88, 528 F.2d 661 (1976).

**3.** *United States v. Carter,* 157 U.S.App.D.C. 149, 482 F.2d 738 (1973).

**4.** As to the underlying legal basis empowering this court to impose limits on impeachment pursuant to D.C.Code § 14–305 (1981), *Bailey* references *Fields. Bailey v. United States,* 447 A.2d 779 (D.C.1982). *Fields* references *Henry* and *Carter. Fields v. United States,* 396 A.2d 522 (D.C.1978). Neither *Henry* nor *Carter* reveals the legal basis upon which the court invades the statutory province of the cross-examiner. I must assume that the court has been exercising some sort of inherent supervisory power all

these years, although to what end is unclear. *Dixon v. United States,* 287 A.2d 89, 92–96 (D.C.), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972) (§ 14–305 does not violate constitutional fair trial assurances). The use of prior conviction impeachment raises no constitutional question and despite the majority's intimation to the contrary, this court would be well-advised not to muddy further the waters in this area. *See Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984) (observation that conviction impeachment under FED.R.EVID. 609 is "a question not reaching constitutional dimensions").

**5.** *Mayo v. United States,* No. 83–527, argued March 15, 1985.

At common law, parties to a judicial proceeding were deemed incompetent to testify at that proceeding, and a witness could be impeached by a prior conviction only if he had been convicted of an infamous crime involving moral turpitude. *Campbell v. United States,* 85 U.S.App.D.C. 133, 134, 176 F.2d 45, 46 (1949). At least as early as 1874, Congress removed the incompetency status regarding interested parties as it applied in the District of Columbia. 25 Stat. 876 (1873–74). At least by 1902 congressional action made clear that such impeachment was permissible, without regard to the juxtapositional-sequential quagmire in which we now find ourselves. 31 Stat. 1357 (1901); 32 Stat. 540 (1902). The 1970 Court Reorganization Act similarly did not change this legislative command.[6] The limits the court now places on impeachment by prior conviction not only lack basis in the legislative history of either D.C.Code § 14–305 (1981) or its predecessors but also are precluded. With the "Luck correction" in 1970, Congress may fairly be said to have barred further judicial tampering with conviction impeachment.

An analysis of the court's "clarification"[7] of the case law reveals an inherent fallacy. The majority holds that if prior conviction impeachment "implies" criminal propensity there is error. (Majority opinion at 460–461 & 464.) It suggests that there may be an error-free way to do it. (Majority opinion at 459–460, notes 2 & 3.) Yet it says, "[e]ven if a prosecutor is scrupulously careful in bringing out a defendant's previous convictions, some prejudice to the defendant is unavoidable." (Majority opinion at 462.) By "prejudice" the majority means propensity prejudice. If prejudice by conviction impeachment is unavoidable, then error always accompanies such impeachment, and we and the trial court are left only with a plain error-harmless error question. I suggest that the majority, despite its professed respect for § 14–305, has overruled the statute and the congressional will behind it. As our federal circuit court has said:

A rule disallowing such conviction evidence would enable an accused to appear as a person whose character entitled him to complete credence, when the facts of his life are to the contrary. Excluding such evidence would also deny a valuable argument to the witness accused who has no prior record.

*United States v. Simpson,* 144 U.S.App.D.C. 259, 261, 445 F.2d 735, 737 (1970). I thus concur with Judge Gallagher, particularly with his *Baptist-Dorman I*[8] approach.

What the majority seems to say is that prior conviction impeachment must be mixed or sandwiched with oblique and less than central cross-examination. It hints that the insulating cross-examination cannot be aimed at the jugular but must be somewhat short of the mark. The majority now requires a skill in partial relevance or diversionary questioning. Thus the majority's view that only the two questions immediately preceding the prior conviction im-

---

**6.** In deliberating over the version of § 14–305 to be included in the Court Reorganization Act, Congress did not address the form or the timing of the introduction of the impeaching prior convictions. The legislative history of § 14–305 dealt almost exclusively with the merits of the Luck Doctrine. Fairly read, Congress' rejection of the Luck Doctrine signalled the desire to remove from the arena of conviction impeachment the discretionary hand of the trial court and to leave intact the prerogative of the cross-examiner. Statement of the Managers on the Part of the Senate Submitted Regarding the Conference Action Upon S. 2601, The President's Crime Legislation for the District of Columbia, prepared for the Senate Comm. on the District of Columbia, 91st Cong., 2d Sess. 24–25 (1970); H.R.Rep. No. 1303, 91st Cong., 2d Sess. 231 (1970); H.R.Rep. No. 907, 91st Cong., 2d Sess. 61–63 (1970); S.Rep. No. 538, 91st Cong., 2d Sess. 4–5 (1969). *Accord Hill v. United States,* 434 A.2d 422, 429 n. 7 (D.C.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982).

**7.** Majority opinion at 458, note 1.

**8.** *Baptist v. United States,* 466 A.2d 452 (D.C. 1983); *Dorman v. United States,* 460 A.2d 986 (D.C.1983) (vacated for rehearing en banc).

peachment were improper draws an unpersuasive, hair-splitting distinction.

Given the rule that conviction impeachment must be buffered when the dreaded question is asked, one might fairly wonder what duty the cross-examiner has at closing argument. Must he deviate to less telling, perhaps boring, argument before he reminds the jury that the defendant is unworthy of their belief because of his earlier conviction? But look what we have said about that! In *Ford v. United States,* 487 A.2d 580 (D.C.1984), the prosecutor, in closing argument, reminded the jury that "[h]ere's a man on trial for first degree murder who twice has been convicted of first degree murder...." *Id.* at 591. At the same time, he warned the jury not to infer "that because he did those, he did these." *Id.* In noting that "the prosecutor skirted danger here," *id.* at 592, this court went on to find no error. How can it be that there is error in not diluting the context of the questioning but no error to argue, in effect: here is a man charged with the very offense for which he has twice been convicted. I concurred in the "no error" holding in *Ford.* Perforce there is no error here.

It is also fair to observe that this may be a rule of unequal application. Though the statute also permits government witnesses to be impeached with convictions, it may be effectively impossible to control such defense impeachment. If improperly done, a mistrial is a highly impractical, dangerous remedy [9] and, of course, an acquittal bars correction on appeal. Nonetheless, given our holding, the trial court is duty bound to enforce it on conviction impeachment of prosecution witnesses and defense counsel would be well advised to conform. Necessarily, both sides are entitled to a fair trial. *United States v. Stevenson,* 138 U.S.App. D.C. 10, 14, 424 F.2d 923, 927 (1970).

Were I to subscribe to the majority's position that the "blow" resulting from conviction impeachment questions must be softened, I would strive for greater consistency in justifying that rule. The court hints—if not outright says—that it may dictate this laminated approach under the due process requirement of fair trial. Yet it applies the non-constitutional harmless error test [10] once it decides that impeachment error—perforce constitutional error—has occurred. Indeed, the majority sees no difference between the plain error and harmless error tests (majority opinion at 464). Thus, the test is the same, with or without an objection. Significantly, in *United States v. Young,* —— U.S. ——, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the Supreme Court has recently articulated the test for plain error in federal courts, which include the District of Columbia Court system. *See* D.C.Code §§ 11–721(e) and 11–946 (1981). To be plain error, the error identified must undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. 105 S.Ct. at 1047. It must be "particularly egregious." *Id.* 105 S.Ct. at 1046, citing *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982).

There is no need to constitutionalize this issue. If the court insists on perpetuating ad hoc review of conviction impeachment, in the face of a reasonably clear statutory proscription, it can do so by an exercise of supervisory authority over the administration of criminal justice. *See United States v. Yates,* 279 A.2d 516, 518 (D.C.1971). Then application of the harmless error rule would be consistent and freed of reasonable doubt review vagaries. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The distinction between element and credibility questioning drawn by the majority is unpersuasive; the legislative history of § 14–305, if anything, pushes us away from limiting the manner of prior conviction impeachment as the majority does

---

**9.** *E.g., Douglas v. United States,* 488 A.2d 121 (D.C.1985).

**10.** *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

here. The whole endeavor is impermissible and unwise.

Accordingly, I would hold that the conviction is free of impeachment error and affirm.

GALLAGHER, Associate Judge, Retired, concurring in the result and dissenting, with whom NEBEKER, Associate Judge, and KERN, Associate Judge, Retired, join.

I concur only in the result reached in this case. I dissent from the far reaching holding that error was committed in the cross-examination of the defendant in relation to his prior convictions and from the enunciation of a new test. When the court went en banc in this case it assumedly was for the purpose of clarifying the law in this jurisdiction in the matter of the use of prior convictions to attack the credibility of a witness. I suspect the court has instead left the law in worse shape than it found it.

This is a case involving a theft of a radio where the court holds it is error for the government to ask of the defendant on cross-examination substantially the same questions the defense counsel asked the defendant on direct examination. In a deliberate trial tactic, *defense counsel asked the defendant on direct examination about a prior conviction:*

Q. Now, Mr. Dorman, have you previously been convicted of armed robbery in this jurisdiction?

A. Yes, sir, in '73 I took a plea to armed robbery that I had committed in the District of Columbia.

Q. In 1973?

A. Yes, sir.

[DEFENSE COUNSEL]: Your Honor, at this time *I would request a cautionary instruction for the jury.*

THE COURT: Ladies and gentlemen, it is permitted under law that past offenses resulting in convictions can be brought to your attention. *They are brought to your attention for one purpose and one purpose only, and that is to be considered in connection with the issue of credibility.* They are to be viewed only

in connection with that issue and are not to be thought of in any connection with whether or not the individual who is testifying to the past conviction is guilty or not guilty of the offense. Therefore, *I caution you that as to any prior convictions that may come to your attention in connection with the defendant in this case, that can be considered only as to his truthtelling ability, and not as to whether or not he committed the offense in this case.*

*Is that instruction satisfactory?*

[DEFENSE COUNSEL]: *Thank you, Your Honor.*

(Emphasis added.)

The testimony of the defendant in relation to the crime charged was far-fetched and the prosecutor conducted a terse, routine cross-examination of the defendant (4 pages of trial transcript). He asked questions going entirely to credibility concerning the theft of the radio, which actually happened in the presence of the officers, at the end of which the prosecutor terminated cross-examination by summarizing the entire testimony of the defendant and asking about the remaining three prior convictions:

Q. So you never touched the radio, is that right?

A. Yes, sir.

Q. You just walked up to it, looked at it, walked down two steps and you weren't even touching it and all of these policemen arrested you for no reason at all, is that correct?

A. Yes, sir.

Q. Now Mr. Dorman, are you the same Lawrence Dorman that on December 21, 1973, was convicted of first degree burglary?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on the same date was convicted of attempted larceny?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on March 22, 1974, was

convicted of assault with a deadly weapon, a gun?

A. Yes, sir.

Q. And are you the same Lawrence Dorman that on November 9th, 1971, was convicted of carrying a dangerous weapon, a gun?

A. Yes, sir.

[THE PROSECUTOR]: I have no further questions, Your Honor.

As is evident, at the end the prosecutor asked the defendant the usual questions about three additional convictions omitted from the questions *by defense counsel of the defendant on direct examination* concerning one of his prior convictions (armed robbery).[1] Later, on redirect examination, the defendant another time himself brought up the question of his prior conviction.

This all seems routine enough. As a trial tactic, the defendant voluntarily laid bare a prior conviction of armed robbery. The reason this trial tactic is used by a defendant is that it is sometimes thought wiser by counsel for defendants to tell the bad news about themselves first rather than permit their opponents to do so, when it is known they are virtually certain to do it. It is referred to in defense circles as "pulling the teeth" of the government in the matter of a defendant's prior convictions.

One different aspect about this case was that the defendant revealed only one prior conviction when actually he had four convictions. At the conclusion of his cross-examination, the prosecutor, without comment, inquired concerning the remaining three convictions and then terminated his very terse cross-examination, thus letting the defendant off light. As I say, it all seemed routine enough—but not so to this court. The majority proceeds to bring out the appellate microscope. True it is, there was a brief cross-examination directed to the defendant's credibility, but, the majority says, what about those last two questions preceding the inquiries about prior convictions? He asked the defendant these two questions:

Q. So you never touched the radio, is that right?

A. Yes, sir.

Q. You just walked up to it, looked at it, walked down two steps and you weren't even touching it and all of these policemen arrested you for no reason at all, is that correct?

A. Yes, sir.

Then came the questions about the prior convictions. The way the majority opinion in this en banc case goes about concluding there was error is rather interesting. The court offers this reasoning:

Although the last two questions before the previous conviction impeachment followed a series of questions directed generally to credibility, the two questions themselves were such that it was inappropriate to place them in juxtaposition with prior conviction impeachment. The first of them elicited appellant's flat denial that he had "touched" the radio. While, strictly speaking, "taking" rather than "touching" is an element of larceny, *see* Criminal Jury Instructions for the District of Columbia, No. 4.55 (3d ed. 1978), we have grave doubts that the jury would distinguish between "taking" and "touching" when all the government's evidence showed that appellant had picked up the radio and carried it away.

Majority op. at 464. So, what one would think is a perfunctory cross-examination which appears harmless enough now becomes error because, says the court, the jury "would naturally and necessarily have taken this particular sequence of questions and answers *as implying* that appellant, convicted in the past of burglary and attempted larceny, had stolen the radio.

---

1. I do not imply that if a defendant on direct examination voluntarily opens up a prior conviction the government, on cross-examination, may misuse its questions so as to convey to the jury that a prior conviction is affirmative evidence of guilt concerning the crime charged.

Thus, the questioning constituted error." *Id.* (emphasis added).

The way the court reasons to that conclusion of error is also interesting. The court finds no fault with the cross-examination of the defendant which it describes as "directed generally to credibility." But, it is those last two questions before the prior conviction inquiry started that gives the court the difficulty. As I related earlier, those two questions are these:

Q. So you never touched the radio, is that right?

A. Yes, sir.

Q. You just walked up to it, looked at it, walked down two steps and you weren't even touching it and all of these policemen arrested you for no reason at all, is that correct?

A. Yes, sir.

This is the court's reasoning on why error occurred with those two questions. First of all, says the court, the "juxtaposition with prior conviction impeachment" was wrong. The reason it was wrong is that the prosecutor "elicited appellant's flat denial that he had 'touched' the radio." We now come to delicate reasoning. The court says:

While, strictly speaking "taking" rather than "touching" is an element of larceny, *see* Criminal Jury Instructions for the District of Columbia, No. 4.55 (3d ed. 1978), we have grave doubts that the jury would distinguish between "taking" and "touching" when all the government's evidence showed that appellant had picked up the radio and carried it away.

Majority op. at 464. But as if that were not a bad enough thing for the prosecutor to do, the court clinches its findings of error with.

The second of the two questions preceding impeachment presented appellant with a summary of his account of the incident. *He responded, predictably, with what was, in effect, a general denial of his guilt.* Immediately thereafter, the prosecutor examined appellant on his previous convictions for burglary, attempted larceny, and other offenses.

Id. (emphasis added).

First of all, the court deals with the proposition that "taking" is the element of the larceny charged, not "touching"—the word used by the prosecutor. Then the court probes the collective mind of the jurors and surmises that the jury would not distinguish between "taking" and "touching" when the government's evidence showed the defendant had picked up the radio and carried it away. Parenthetically, the jury had not yet been instructed by the court on the elements of larceny.

Having divined the collective mental reaction of the jury in that manner, there was still no clincher. So, the court proceeds to manufacture one, saying, "He responded predictably with what was, in effect, a general denial of guilt." That denial was what could not properly be followed by a question about a prior conviction, says the court.

In reality, what happened was the prosecutor summarized the defendant's entire rather incredible testimony—purely a credibility type of question—and when asked by the prosecutor if that was a correct summary of his testimony, the defendant affirmed that this was a correct statement of his testimony with a "Yes, sir." Having ended the credibility attack, he was asked questions concerning his prior convictions. In a strained, unfair construction of this bit of colloquy, the court finds error.

In discussing the state of the law before this case came along, I will start with two often cited opinions on this question by the United States Circuit Court for this jurisdiction, *United States v. Carter*, 157 U.S. App.D.C. 149, 482 F.2d 738 (1973) and *United States v. Henry*, 174 U.S.App.D.C. 88, 528 F.2d 661 (1976), and continue with several decisions of this court.

We begin with *Carter, supra.* There, the circuit court began its discussion by quoting the Supreme Court on the use of prior crimes for limited purposes:

Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent ... an element in the crime ... identity ... malice ... motive ... a system of criminal activity ... or when the defendant has raised the issue of his character ... or when the defendant has testified and the State seeks to impeach his credibility....

\* \* \* \* \* \*

The defendants' interests are protected by limiting instructions ... and by the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence.

*Id.* 157 U.S.App.D.C. at 150, 482 F.2d at 739 (citing *Spencer v. Texas*, 385 U.S. 554, 560–61, 87 S.Ct. 648, 651–52, 17 L.Ed.2d 606 (1967); *McGautha v. California*, 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971)).

The court went on to restate the statutory rule (D.C.Code § 14–305(b) (1981)) that evidence of a prior conviction that qualifies under the statute shall be admitted for the purpose of attacking a defendant's credibility.[2] But, quoting from *Spencer v. Texas*, *supra*, the court related:

Because of the possibility that the generality of the jury's verdict might mask a finding of guilt based on an accused's past crimes or unsavory reputation, state and federal courts have consistently refused to admit evidence of past crimes except in circumstances where it tends to prove something other than general criminal disposition.

*Carter, supra,* 157 U.S.App.D.C. at 150, 482 F.2d at 739 (quoting *Spencer v. Texas, supra,* 385 U.S. at 575, 87 S.Ct. at 660

(Warren, J., dissenting in part and concurring in part)).

The court then set forth the phase of cross-examination there at issue:

Q. [ASSISTANT UNITED STATES ATTORNEY]: And you wouldn't rob that man right?

A. I had no reason to rob when I am working.

Q. You wouldn't do something like that?

A. No, I wouldn't.

Q. But in 1968, you were convicted of six counts of robbery and assault with a dangerous weapon, weren't you, on three different people?

A. Yes, I was, and I have learned my lesson from that.

Q. You did?

A. Right.

*Id.* 157 U.S.App.D.C. at 151, 482 F.2d at 740.

The court construed that cross-examination, as do I, as having been *"designed effectively to persuade the jury* that [the defendant] would rob a man, and in fact committed the robbery for which he was now charged." *Id.* (emphasis added).[3] The setting for the use of the prior conviction was to bait the defendant with—you wouldn't do something like that, would you—but yet in 1968 you were convicted of doing the same thing. Then when the defendant replied he had learned his lesson from the prior conviction, the prosecutor interjected, "You did?" In short, the context was deliberate use of the prior conviction to establish present guilt, and the court found error.

Turning to *Henry, supra,* the defendant was being prosecuted on narcotics charges. After being asked several questions about whether he had supplied someone with nar-

---

**2.** The statute is sometimes referred to as the *Luck* statute. This is because in 1965, the United States Circuit Court for this jurisdiction, in deciding *Luck v. United States,* 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), ruled that the introduction of prior convictions was *discretionary* with the trial judge. The present statute on

introduction of prior convictions amended the predecessor statute to make clear that evidence of relevant prior convictions *shall* be admitted.

**3.** The court, as we see, found fault with the deliberate purpose of the prosecutor.

cotics and having received denials, the prosecutor asked: "Is it not true that [you were] convicted ... for possession of cocaine with intent to distribute cocaine?" 174 U.S.App.D.C. at 91, 528 F.2d at 664. The prosecutor then resumed by asking the defendant a series of questions on whether he had ever seen or was familiar with heroin, to all of which objections were sustained, at which point the prosecutor then for a second time asked about a prior conviction: "Mr. Henry, are you the same Roland R. Henry that was convicted ... of possession of heroin with intent to distribute it?" *Id.* at 92, 528 F.2d at 665.

Once again, the court held that "the manner in which the prosecutor asked his questions was improperly *designed* to suggest to the jury that prior guilt was a basis for inferring guilt of the crimes for which the defendant was then on trial." *Id.* at 94, 528 F.2d at 667 (emphasis added).

Then along came our decision in *Fields v. United States,* 396 A.2d 522 (D.C.1978). There, in a robbery and kidnapping prosecution, on direct examination the defendant denied participation and denied having a gun in his hand at the time. On cross-examination, the defendant denied he had a gun with him on the night of the crime. Whereupon, the prosecutor asked: "Are you the same Jesse Fields that was convicted in 1969 of carrying a pistol without a license?" *Id.* at 526.

Upon receiving an affirmation, the prosecutor resumed the cross-examination and a short while later once again asked whether the defendant had a gun with him that night. Upon receiving a denial, the prosecutor once again asked: "Are you the same Jesse Fields that was convicted of unregistered possession of a firearm [in 1975]?" [4] *Id.* Upon receiving an affirmation, the prosecutor then introduced evidence of several other convictions to impeach the defendant. This court concluded that the manner in which the prior convictions were utilized "appeared *designed* to suggest to the jury that because appellant carried a

gun before, he was probably guilty of the crime charged." *Id.* at 528 (emphasis added).

After that decision came *Bailey v. United States,* 447 A.2d 779 (D.C.1982). In *Bailey,* the defendant was prosecuted on a charge of assault with intent to rape. On cross-examination of the defendant, the prosecutor asked:

Q. You didn't drag her down [into the basement]?

A. No, I didn't.

Q. That didn't happen. You didn't try to rape her down there, is that right?

A. That's correct.

Q. Are you the same Phillip Bailey who ... was convicted ... of armed rape?

A. Yes, I am.

*Id.* at 781.

This court held that our decision in *Fields, supra,* mandated reversal because in *Bailey* substantially the same sequence of questions appeared.

Next came our recent decision in *Baptist v. United States,* 466 A.2d 452 (D.C.1983). In *Baptist,* we reached a different result and the court had this to say:

During cross-examination of appellant, the prosecutor, on three separate occasions, used one or another of appellant's three prior convictions to impeach appellant. At the outset of his cross-examination the prosecutor without objection impeached appellant with a 1975 conviction for larceny. This was followed by the trial court's cautionary instruction on the limited admissibility of appellant's prior convictions.

The prosecutor then began questioning appellant concerning his car's breakdown, his possession of the pliers and wire cutters, and his discovery of the hole in Conrail's fence. Appellant was then impeached with a 1975 attempted robbery conviction. The court overruled appellant's objections.

---

**4.** This related to a second conviction for this offense.

Continuing the cross-examination, the prosecutor asked appellant whether he had intended to steal the contents of the freight cars. Appellant denied such intent. The prosecutor then asked questions about appellant's awareness that boxcars sometimes contain valuable cargo, his familiarity with the train yard, and his reaction upon finding only large rolls of paper in the first three boxcars. After appellant responded that he had not been trying to steal anything from the car he was found in, government counsel asked him to explain why four boxes were stacked near the door. Appellant denied that he had stacked four boxes near the door, but asserted that he had picked up one box and turned it around to see what it was. The prosecutor then concluded his examination by impeaching appellant with a 1980 conviction for attempted petit larceny. The court again overruled appellant's objection and provided an immediate cautionary instruction on the use of evidence of prior convictions for impeachment purposes.

*Id.* at 454–55.

This court then went on to criticize the dissent in the decision of the hearing division in *Dorman v. United States, (Dorman I)*, 460 A.2d 986 (D.C.1983), and essentially adopted the majority opinion approach in that case.[5] Judge Belson, speaking for the court, then enunciated a test, which is now abandoned, that should have remained the state of the law on this issue:

> The test is whether the prosecutor's reference to the defendant's prior convictions during his cross-examination *can be intended only to suggest to the jury* that defendant is guilty of the crime charged because of his previous conviction or convictions.

*Baptist, supra,* 466 A.2d at 458 (emphasis added). The court made the significant observation that "like the sequence of

questions in *Dorman ... questions which can be said to relate to the credibility of the defendant will often relate as well to elements of the offense charged." Id.* at 457 (emphasis added).

This is a truism on cross-examination of a defendant in a criminal case. The cross-examiner should not be expected to do otherwise. The court in *Baptist* then referred to the restrictive view of the dissent in *Dorman I, supra,* which view it disavowed, *Baptist, supra,* 466 A.2d at 457–58, and went on to make the telling point that:

> [T]he expression of what might be termed a restrictive view as to previous conviction impeachment which was set forth in the dissent in *Dorman [I]* illustrates well the potential for *virtually nullifying § 14-305* which the development of this line of cases could present.

*Id.* at 457 (emphasis added).

The court focused upon the sequence of questions preceding the third and last use of prior convictions during the cross-examination. After noting that it did not immediately follow defendant's general denial of the crime charged, the court found the manner of impeachment permissible. In so doing, the court stated:

> *The fact that the preceding answer dealt with circumstances surrounding commission of the alleged offenses did not preclude such questioning* [on the prior conviction].

*Id.* at 459 (emphasis added).

That was the state of the law when this court undertook en banc consideration of *Dorman.* The court in *Baptist* had unequivocally adopted the majority opinion of the hearing division in *Dorman I* and specifically rejected the dissenting opinion. Now, the court effectively reverses itself and for the most part adopts that dissenting opinion in *Dorman I.* I relate this sequence in the interest of helping to avoid future confusion to the bench and bar in this jurisdiction. That is to say, it seems

---

**5.** The decision of the hearing division in *Dorman I, supra,* was, of course, vacated when the court went en banc in this case. In order to

understand the decision-making process in this case, however, it is necessary to be familiar with the recent history of our decisions on this issue.

unmistakably clear that the court's en banc opinion in this case effectively overrules this court's decision in *Baptist, supra,* and sets a new standard. Of this, there can hardly be genuine doubt.

In reading the court's opinion in this case, I have a hard time finding the "most of *Baptist's* analysis" that the court now professes to be approving. It seems to me that " '[t]he matter does not appear to [the court] now as it appears to have appeared to [it in *Baptist*].' " *McGrath v. Kristensen,* 340 U.S. 162, 178, 71 S.Ct. 224, 233, 95 L.Ed. 173 (1950) (Jackson, J., concurring) (quoting *Andrews v. Styrap,* 26 L.T.R. (N.S.) 704, 706).

It may seem at first glance that the court's opinion in this case does not have exceptional significance, but this would be a shallow reading. The holding of error in this decision will permeate criminal trials in this jurisdiction where the government cross-examines the defendant on prior convictions. First of all, it is an en banc decision. Secondly, it extends the prior law and *establishes a new test,* as I will explain. Next, it is written so it could reasonably apply to almost any routine cross-examination. It is commonplace in trials for the government to introduce prior convictions during cross-examination of the defendant.[6] In the trial court, where the judges, prosecutors and defense counsel must deal with the world of reality, the majority opinion in this case is not only bound to cause confusion on when, at what point during cross-examination, as a practical matter, the prosecutor may properly ask the usual questions of defendants about prior convictions. The court's opinion also causes extreme uncertainty on what the cross-examiner may ask the defendant prior to the question on prior convictions. This is a pragmatic problem and hardly lends itself to the absolutist approach of the majority opinion.

I think it would have been better if the court had not applied the appellate microscope in this case and had adhered to the *Baptist* court's view of *Dorman I.* The record in this case is materially different from *Carter, Henry,* and *Fields, supra.* It is not difficult to perceive when a prosecutor is utilizing, intentionally or unintentionally, prior convictions in such a way as to convey affirmative evidence of guilt.[7] I believe that in most instances where this occurs, it will be as a result of a deliberate purpose of the prosecutor to use prior convictions to this end. If prosecutors have this purpose, it will be readily apparent. It is rarely accidental.[8] They are, of course, risking a reversal if there is a conviction.

Up until this case, we had reversed only when it was apparent that the fatal questions were so "designed" as to have the impact that the defendant was convicted before so he should be convicted again.

---

**6.** I might say, in passing, that it is not unknown to criminal law that evidence of prior crime is used as affirmative evidence concerning the crime charged. Evidence of prior crime, with appropriate instruction, is routinely admitted into evidence under the *Drew* doctrine, to show (a) motive, (b) intent, (c) absence of mistake or accident, (d) common scheme or plan, and (e) identity of person charged with the crime. *Drew v. United States,* 118 U.S.App.D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964). While the *Drew* doctrine is not here involved, I refer to it to illustrate there is nothing particularly revolutionary about introductions of prior convictions as affirmative evidence. Utilization of the *Drew* doctrine is commonplace in this jurisdiction. This is not to say that, because of the *Drew* doctrine, the trial court should not reasonably control the use of prior convictions in the con-

text of a credibility attack by the government. But, on the other hand, it is to say that this court should not lose its equilibrium in the process of decision-making on this issue.

**7.** To illustrate, the fatal questions in *Bailey, supra,* were:

 Q. ... You didn't try to rape her down there, is that right?

 A. That's correct.

 Q. Are you the same Phillip Bailey who ... was convicted ... of armed rape?

 A. Yes, I am.

447 A.2d at 781.

**8.** *See* majority op. at 460, where this court says it is concerned with jury impact not the motive of the prosecutor, a comment without practical significance.

This is the rule which was established by the circuit court.

To illustrate, in the circuit court's grandfather opinion in this area, *United States v. Carter, supra,* the court stated:

> [T]he manner in which he elicited the evidence was *calculated to defeat the purpose of the [impeachment] rule ....* [It] was *designed effectively to persuade the jury* that ... [Carter] would rob a man, and in fact committed the robbery for which he was now charged.

157 U.S.App.D.C. at 151, 482 F.2d at 740 (emphasis added).

In this court's successor decision in *Fields v. United States, supra,* we stated: "[T]he questioning *appeared designed to suggest to the jury* that because ... [Fields] carried a gun before, he was probably guilty of the crime charged." 396 A.2d at 528 (emphasis added).

Then came the recent opinion of this court in *Baptist v. United States, supra,* where we had definitively laid down the standard:

> [T]here will always remain the necessity of determining whether particular records evince *clear abuse.* The test is whether the prosecutor's reference to the defendant's prior convictions during his cross-examination *can be intended only to suggest to the jury that [the] defendant is guilty of the crime charged* because of his previous conviction or convictions.

466 A.2d at 458 (emphasis added).

The court now abandons the previous rule on prosecutorial "design" and enunciates a new one on *implication of guilt.*

This court now says, in so many words, if the crucial sequence of questions even carries an *implication* of guilt because of a prior conviction, it is error. To be precise, the court here says:

> The test is whether the prosecutor's reference to a defendant's previous conviction is such that, under the circumstances, reasonable jurors would naturally and necessarily regard the manner in which the impeachment is accomplished as *implying* that the defendant is guilty of the crime charged because he was guilty of past crimes.

Majority op. at 460 (emphasis added; footnote omitted).

In other words, this court now must later review the cross-examination of the defendant and if it then appears to the court on appeal that the sequence of questions created an *implication* of present guilt because of past convictions in the collective mind of the jury, this would constitute error.[9] One must have a certain sympathetic understanding for the trial judges and the prosecutors in exercising their judgment on what is permissible cross-examination from now on. As far as I can see, the court is holding that in the questions under scrutiny the cross-examiner must leave no *implication* of guilt of the crime charged.

This may be an interesting little academic exercise in legal abstractions, but our duty is to deal with the real world of the courtroom. When the government is putting on its case in the criminal courtroom, "implications" on the defendant's guilt of the crime charged usually exude from almost every evidentiary move it makes and particularly during cross-examination of the defendant. The circuit court doubtlessly was aware of this in *Carter* and *Henry, supra,* when it formulated the rule on this issue. I see no reason now to abandon that rule and open the flood gates with the new *implication of guilt* rule.

This court is requiring the government to sanitize unrealistically cross-examination, even in the context of a credibility attack such as occurred here. This is notwithstanding that, as I have indicated, the author of this court's recent opinion in *Baptist, supra,* stated correctly: "[Q]uestions which can be said to relate to the credibility of the defendant will often relate as well to

---

**9.** The court in its "measuring cup" test does not instruct us on how in the process to excise the inevitable prejudice resulting from a prior conviction.

elements of the offense charged." 466 A.2d at 457. The opinion of the en banc court in this case cannot avoid impeding the government's cross-examination of a defendant with prior convictions.

Looking at the court's opinion here from a down to earth viewpoint, this is a case where the defendant himself opened up the matter of his prior convictions on direct examination,[10] (and again on redirect examination) and in so doing related only one of four of his prior convictions on direct examination; on cross-examination the government briefly questioned him from a credibility approach on the far-fetched nature of his defense testimony; this was concluded with two questions which summarized very succinctly his far-fetched testimony. The defendant responded that this was a correct summary of his testimony and the prosecutor then introduced the three prior convictions *the defendant had omitted in opening up the subject of prior convictions on direct examination,* and immediately concluded the cross-examination.

The prosecutor had an obvious right to examine within the scope of the defendant's direct examination about his prior convictions, and in so doing did nothing improper in the process. The trial judge gave the usual limiting instruction on at least two occasions in the trial. To create an en banc precedent of error in this case is unsound and needless. The majority finding of error on this record can be fit into a showing of error in almost any cross-examination on prior convictions.

As matters stand, I believe the trial court is now going to have uncertainty on introductions of prior convictions and this court will be flooded on appeal with variations on this issue for some time to come. On review, one should take a basic view in relation to cross-examination in a trial. In assessing cross-examination for error, we should not indulge in delicate shadings and fine ratiocinations. As an illustration, one need only ponder the important notes 2 and 3 of the majority opinion. The trial bench and bar should be spared the confusion this will engender.

To demonstrate the extent to which the court's decisions are now changing in the matter of introducing prior convictions on cross-examination, in the very recent decision in *Reed v. United States,* 485 A.2d 613, 617 (D.C.1984), this court makes this statement:

> [C]ross-examination of a defendant by impeachment of prior convictions must be undertaken in a manner to avoid suggesting guilt of pending charges as a result of prior convictions *and to avoid suggesting bad character or worse about a defendant.* (Emphasis added.)

I should think this is an extraordinary—to say nothing of insurmountable—burden to place on the prosecutor. I am not aware of how a prosecutor is able "to avoid suggesting bad character or worse about a defendant" while introducing prior convictions.

If, however, the court is determined to find error here, it would have been preferable to suggest a formal rule of procedure for the future in the matter of admission of prior convictions, rather than leave the trial bench and bar in a state of uncertainty.[11] Perhaps the trial court will now itself choose to do this by exercise of its rule making authority in an effort to rescue itself from a morass.

KERN, Associate Judge, Retired, concurring.

I concur in the judgment affirming the petit larceny conviction of appellant. I con-

---

**10.** As I have indicated, I do not imply that this step gives the government a license to misuse his prior convictions on cross-examination.

**11.** As Judge Nebeker aptly points out, one cannot reconcile the opinion in this case and the court's very recent opinion *finding no error* in *Ford v. United States,* 487 A.2d 580 (D.C.1984), where the prosecutor in closing argument stated: "Here's a man on trial for first degree murder who twice has been convicted of first degree murder...." *Id.* at 591. That is perhaps about as prejudicial as a statement to the jury can be regarding prior convictions—no matter what limiting remark a prosecutor may make. Yet, error was not found there by this court.

cur in that part of the majority opinion which declares that a prosecutor's reference during cross-examination of a defendant to his prior convictions is impermissible when "under the circumstances, reasonable jurors would naturally and necessarily regard the manner in which the impeachment is accomplished as implying that the defendant is guilty of the crime charged because he was guilty of past crimes." (Majority op. at 460) However, I dissent from the majority's conclusion that the prosecutor's reference to appellant's previous convictions during cross-examination here constituted error.

Under the particular circumstances of the instant case the jurors in my view would *not* "naturally and necessarily" have regarded the prosecutor's reference to appellant's previous convictions of carrying a dangerous weapon, of assault with a deadly weapon, and of first degree burglary and attempted larceny as implying that appellant had committed the crime for which he was being tried—petit larceny. To the contrary, I do not see how under the facts here a *reasonable* juror could have considered the prosecutor's questions eliciting from appellant his admission of these previous convictions as anything other than attacks upon appellant's credibility. Congress has mandated this procedure as proper in this jurisdiction[1] and this court has upheld such procedure as constitutional. *See Dixon v. United States,* 287 A.2d 89 (D.C.), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972).

Specifically, the jurors were instructed *three* times by the trial court that the references to appellant's prior convictions in questions by *both* defense counsel and the prosecutor during direct examination, cross-examination and redirect examination were to be considered by them solely in determining how credible they deemed appellant's testimony. Also, the prosecutor in the instant case, unlike the prosecutors in the cases cited by the majority, preceded his reference to appellant's prior convictions with a half-dozen questions concerning the truthfulness of the testimony from the witness stand of other witnesses. Thus, the questions to appellant were propounded in a context of credibility. Under these circumstances, I am unable to agree on this record that any *reasonable* juror would "naturally and necessarily" regard the prosecutor's questions as sly attempts on his part to imply that appellant was guilty. Rather, it is clear that the prosecutor was suggesting that appellant was being untruthful in his testimony.